[Civ. No. 17859. Third Dist. Apr. 24, 1980.]

AMERICAN EMPLOYER'S INSURANCE COMPANY et al.,
Plaintiffs and Appellants, v.
MICHAEL SMITH, Defendant and Respondent.

UNITED STATES FIDELITY AND GUARANTY COMPANY,
Plaintiff, v.
MICHAEL SMITH, Defendant and Respondent;
AMERICAN EMPLOYER'S INSURANCE COMPANY et al.,
Defendants and Appellants.

COUNSEL

Cole & Cole and Stephen N. Cole for Plaintiffs and Appellants and Defendants and Appellants.

Michael Smith, in pro. per., Hardy, Erich & Brown, William A. Wilson and David W. Janes for Defendant and Respondent.

OPINION

**REYNOSO, J.**—Did the trial court err in granting a nonsuit on a negligence cause of action on the ground that the evidence showed the tortious conduct of defendant to have been intentional? In the context of the posture of the litigation we describe below we hold that it is not a defense to a negligence cause of action that the evidence supports a finding of greater culpability. It was therefore error for the trial court to grant a nonsuit. We reverse the judgment.

I

Defendant set a series of fires in the City of Woodland during the evening hours of October 7, 1974. First, at 7:45 p.m. he ignited a fire in the trash bin at a Value Giant, then 25 minutes later he set fire to the papers on a bulletin board at the post office. A few minutes thereafter papers and wood behind a shed near the Four Seasons were set aflame by defendant. Finally, at 9:17, defendant set his last fire for the evening, the burning of a storage shed at Aunt Lila's Antique Shop.

This litigation arises from the fire at the Four Seasons. Defendant was 16 years, 10 months of age at that time. He testified that he took some boards and leaned them over trash near a shed and then set fire to the trash. He got into a car and went around the block to a vantage point and observed that the roof of the shed was on fire. Defendant was surprised and scared when he saw that the roof of the shed was on fire, and he called the fire department so that the building would not burn down.[1] Defendant proceeded to Aunt Lila's and set a storage shed on

---

[1] At the time of the trial defendant was not certain whether he called the fire department before he set the fire to Aunt Lila's storage shed or after that incident. He was sure, however, that he called about the Aunt Lila's fire.

fire. Defendant subsequently pleaded guilty to arson. The corrugated steel material of which the shed at the Four Seasons was composed heated. The heating of the steel, in turn, set the contents of the shed on fire. The fire spread from the shed to the adjacent buildings. As the result of the spreading of the fire Emil and Edward Schmauderer (doing business as Emil's Quality Shoes) were damaged in the amount of $10,110. Theodore C. Muegge was damaged in the amount of $31,423.59. Jack Carter, Harold Sedgwick and Mary Burton (doing business as Burton's Shoes) were damaged in the amount of $131,036.

At the time of the fire plaintiff American Employers Insurance Company was the insurer of Emil's Quality Shoes and Theodore C. Muegge. Plaintiff First State Insurance Company was the insurer of Burton's Shoes. Pursuant to the contracts of insurance the plaintiffs paid to their respective insureds the total sums by which they were damaged due to the fire.

At the time of the fire, defendant's parents, Clyde R. and Margaret Smith, maintained a policy of homeowner's insurance with the United States Fidelity & Guaranty Company. Defendant, as a resident relative of the named insureds, was also insured by the policy. Under the policy United States Fidelity & Guaranty Company is obligated to pay to the insureds all sums they are required to pay to others by reason of liability imposed upon them as the result of damage to property, up to the policy limit of $25,000.

United States Fidelity & Guaranty Company believed that it was not obligated to indemnify or defend defendant since his acts were intentional. Accordingly, it filed a complaint for declaratory relief. The action for declaratory relief and the action by plaintiffs against Michael Smith were subsequently consolidated for trial.

All defendants who had been sued initially, other than Michael Smith, were dismissed from the action during pretrial proceedings. When the matter was set for trial plaintiffs dismissed all causes of action against Michael Smith except the negligence cause of action. The matter then proceeded to trial.

After plaintiffs rested defendant moved for a nonsuit on the ground that the evidence clearly showed that his tort was intentional and that evidence showing an intentional tort cannot support a verdict on a negligence cause of action. The trial court agreed and granted the motion.

United States Fidelity & Guaranty Company then moved for dismissal of the declaratory relief action without prejudice, stating that in view of the nonsuit the declaratory relief action became moot. The dismissal was granted.

Plaintiffs filed a notice of appeal purporting to appeal from both the judgment of nonsuit and the dismissal of the declaratory relief action. United States Fidelity & Guaranty Company moved for an order dismissing the appeal as to it. On July 6, 1979, this court granted the motion and dismissed the appeal as moot, with the provision that the dismissal as to United States Fidelity & Guaranty would not affect the appeal as to Michael Smith. We are thus concerned only with the appeal involving the liability of Michael Smith.

## II

■ A motion for nonsuit is the equivalent of a demurrer to the evidence; it concedes the truth of the facts proved but denies that they, as a matter of law, sustain the plaintiff's case. (4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 350, pp. 3149-3150.) ■ On this review of a judgment of nonsuit we are thus required to determine whether the trial court was correct in ruling that, as a matter of law, plaintiff's evidence does not support a cause of action for negligence.

Generally, it is the plaintiff who argues that the evidence sustains the more grievous wrong while the defendant argues that the conduct is mere negligence. Decisional law has distinguished negligence from willful or intentional misconduct in that context. It is clear that plaintiffs do not desire a judgment for intentional or willful misconduct since such a judgment would preclude indemnification by defendant's insurer. Defendant, on the other hand, wishes to be found to have committed an intentional or willful wrong, since under that theory such a finding would preclude liability for negligence. No appellate decision has dealt with litigants in this posture. The decisional law is of questionable value.

Defendant's primary reliance, at trial and on appeal, is placed upon *Donnelly* v. *Southern Pacific Co.* (1941) 18 Cal.2d 863 [118 P.2d 465]. In that case the plaintiff was injured in a train collision while traveling on a free pass provided to the spouses of the defendant's employees. The pass contained a provision that the defendant would not be liable under

any circumstances for any injury incurred by the user of the pass. The evidence showed that the collision occurred when an employee improperly set a switch. The jury was instructed that the plaintiff could recover only for gross negligence. After a plaintiff's verdict the defendant appealed. The California Supreme Court noted that federal law applied and that under federal law a railroad could contract to release itself of liability for negligence, but not for willful and wanton negligence. It was thus necessary to determine what was meant by willful and wanton negligence.

In this connection the court explained: "Negligence is an unintentional tort, a failure to exercise the degree of care in a given situation that a reasonable man under similar circumstances would exercise to protect others from harm. [Citations.] A negligent person has no desire to cause the harm that results from his carelessness [citation], and he must be distinguished from a person guilty of willful misconduct, such as assault and battery, who intends to cause harm. [Citation.] Willfulness and negligence are contradictory terms. [Citations.] If conduct is negligent, it is not willful; if it is willful, it is not negligent. It is frequently difficult, however, to characterize conduct as willful or negligent. A tort having some of the characteristics of both negligence and willfulness occurs when a person with no intent to cause harm intentionally performs an act so unreasonable and dangerous that he knows, or should know, it is highly probable that harm will result. [Citations.] Such a tort has been labeled 'willful negligence,' 'wanton and willful negligence,' 'wanton and willful misconduct,' and even 'gross negligence.' It is most accurately designated as wanton and reckless misconduct." (*Donnelly, supra,* at p. 869.) The court found no sufficient evidence of wanton and reckless misconduct, and thus reversed the judgment. (*Id.,* at p. 872.)

The language used in the *Donnelly* decision appears to support defendant's contention. Nevertheless, it must be noted that the court was not concerned with the same issue which concerns us. The court in *Donnelly* was required to determine whether evidence which would support a finding of negligence, or even gross negligence, would also support a finding of willful and reckless misconduct. We deal with the reverse, whether evidence which would support a finding of willful and reckless misconduct or intentional wrongdoing could also support a finding of negligence.

Negligence has been variously defined and is, according to Prosser, one kind of conduct. (Prosser, Torts (4th ed. 1971) § 30, p. 143.) "Negligence is a matter of risk—that is to say, of recognizable danger of injury. It has been defined as 'conduct which involves an unreasonably great risk of causing damage,' or, more fully, conduct 'which falls below the standard established by law for the protection of others against unreasonably great risk of harm.' 'Negligence is conduct, and not a state of mind.' In most instances, it is caused by heedlessness or carelessness, which makes the negligent party unaware of the results which may follow from his act. But it may also exist where he has considered the possible consequences carefully, and has exercised his own best judgment." (*Id.*, § 31, at p. 145, fns. omitted.)

Conduct which causes harm may extend from total innocence to intentional misconduct. "As the probability of injury to another, apparent from the facts within his knowledge, becomes greater, his conduct takes on more of the attributes of intent, until it reaches that substantial certainty of harm which juries, and sometimes courts, may find inseparable from intent itself. Such intermediate mental states, based upon a recognizable great probability of harm, may still properly be classed as 'negligence,' but are commonly called 'reckless,' 'wanton,' or even 'wilful.'" (*Id.*, at pp. 145-146, fns. omitted.)

All human conduct fits along a continuum which passes from totally innocent conduct through slight negligence, negligence, gross negligence, willful and wanton or reckless conduct, and finally to intentional misconduct. (See Elliott, *Degrees of Negligence* (1933) 6 So.Cal.L.Rev. 91.) That no particular example of human conduct may neatly fit into any particular niche to the exclusion of all others has been amply demonstrated by the difficulty courts have had in defining these levels of conduct. (See 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 504, p. 2770.) It is seldom, if ever, necessary for a court to determine the precise point on the continuum of human conduct that any given conduct fits. Whether any particular conduct is sufficiently culpable to support the imposition of liability is a question of fact for the trier of fact. (*Id.*, § 492, at p. 2755.) The question for a court is whether the evidence, judged in the light most favorable to the prevailing party, supports the finding of the trier of fact. This question is answered when the court determines whether the conduct shown by the evidence passes the minimum threshold necessary to impose liability. It is generally irrelevant the evidence might also support a finding that the conduct was of a more culpable nature.

In the usual negligence action the plaintiff must only introduce evidence which tends to prove that the defendant's conduct created an unreasonable risk of harm. Defendant contends that he should be exonerated from liability because his conduct was more culpable than the minimum required to establish liability. We reject such a contention.

Actionable negligence involves a legal duty to use due care, the breach of such duty, and damages proximately caused by the breach of duty. (*Id.*, § 488, at p. 2749, and cases cited therein.) Plaintiffs' evidence tended to show that defendant breached his duty of due care by starting a fire which unreasonably endangered the adjoining buildings. Defendant's breach of duty proximately caused harm to the plaintiffs when the fire spread to the buildings and plaintiffs were forced to indemnify their insureds for damages caused by the fire. This evidence makes out a prima facie case of liability for negligence and it is irrelevant that defendant's conduct might also support a finding of a greater degree of culpability. In short, it is not a defense to negligence to contend that the conduct was willful or the harm intended.

Defendant contends, however, that plaintiffs should be barred from recovering a judgment in negligence because they deliberately chose not to proceed on a cause of action for an intentional tort. It is clear that the novel posture the parties have taken in this action is dictated by the question of the availability of insurance to satisfy a judgment. Defendant is a minor and may well be without assets to satisfy a judgment. In that case plaintiffs, should they prevail against defendant, might only recover to the extent of defendant's insurance coverage. The parties agree that if defendant's conduct was willful or intentional then insurance coverage is not available. We recall that the insurer, United States Fidelity & Guaranty Company, had been dismissed as a party to the appeal. We deal only with liability (not insurance coverage) of defendant to plaintiffs. It may be necessary in order for plaintiffs to recover any portion of their loss that they not only obtain a judgment against defendant, but that they show, as against the insurer (United States Fidelity & Guaranty Company), that defendant's conduct was not willful or intentional. Whether plaintiffs may satisfy a judgment through defendant's insurance is irrelevant on the issue of whether they may obtain a judgment against defendant.

*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168], we believe, is instructive in resolving the issue

posed by the case at bench. There, the defendant insurance company contended that it need not defend an action on behalf of an insured where it appeared that the insured's liability might be based upon intentional or willful conduct because to do so would place it in an unethical situation since it would be in the insured's interest to establish that the conduct was merely negligent and in the company's interest to establish that the conduct was willful and thus not covered by the insurance policy. The Supreme Court rejected such an argument stating: "Since, however, the court in the third party suit does not adjudicate the issue of coverage, the insurer's argument collapses. The only question there litigated is the insured's *liability*. The alleged victim does not concern himself with the theory of liability; he desires only the largest possible judgment. Similarly, the insured and insurer seek only to avoid, or at least to minimize, the judgment. As we have noted, modern procedural rules focus on whether, on a given set of facts, the plaintiff, regardless of the theory, may recover. Thus the question of whether or not the insured engaged in intentional conduct does not normally formulate an issue which is resolved in that litigation. [¶] In any event, if the insurer adequately reserves its right to assert the noncoverage defense later, it will not be bound by the judgment. If the injured party prevails, that party or the insured will assert his claim against the insurer. At this time the insurer can raise the noncoverage defense previously reserved." (*Gray* v. *Insurance Co., supra*, at p. 279; italics in original, fns. omitted.)

The issue of insurance coverage is not before us, and was not before the trial court as it relates to the plaintiffs and defendant involved in this appeal.[2] We have noted that we deal only with the issue of whether, conceding the truth of the facts proved, the nonsuit in favor of defendant is proper; that is, that the evidence as a matter of law does not support a cause for negligence. Viewed in that light, we hold that the granting of the nonsuit was error. A showing of willfulness does not as a matter of law negate negligence.

---

[2]Defendant's insurer, United States Fidelity & Guaranty, brought an action for declaratory relief to establish that it had no duty to defend or indemnify since defendant's conduct was willful or intentional. Whether defendant's conduct was willful or intentional was at issue in that action, but as we note in the text, is not at issue in this appeal. If the trial court determined that the evidence, as a matter of law, required a finding that defendant's conduct was willful or intentional, then it may direct a verdict in favor of United States Fidelity & Guaranty Company.

The judgment is reversed and remanded to the trial court for further proceedings in accordance with the views expressed herein.

Regan, Acting P. J., and Grossfeld, J.,* concurred.

A petition for a rehearing was denied May 23, 1980, and the opinion was modified to read as printed above. The petition of respondent Smith for a hearing by the Supreme Court was denied June 18, 1980.

---

*Assigned by the Chairperson of the Judicial Council.