[Civ. No. 22696. Third Dist. Aug. 17, 1984.]

UNITED STATES FIDELITY AND GUARANTY COMPANY,
Plaintiff and Respondent, v.
AMERICAN EMPLOYER'S INSURANCE COMPANY et al.,
Defendants and Appellants.

278

COUNSEL

Cole, Cross, Turner & Culbreth, Cole, Cross & Culbreth and Stephen N. Cole for Defendants and Appellants.

Bolling, Walter & Gawthrop, Charlotte E. Hemker-Smith and George E. Murphy for Plaintiff and Respondent.

OPINION

**CARR, J.**—We are here presented with a familiar script. In *American Employer's Ins. Co.* v. *Smith* (1980) 105 Cal.App.3d 94 [163 Cal.Rptr. 649], we determined the trial court prejudicially erred in granting a nonsuit on a negligence cause of action on the basis the evidence showed the tortious conduct of Michael Smith, the only defendant not dismissed from that action, in setting a certain fire which caused damage was intentional. Upon reversal and remand, the trial court entered judgment against Michael Smith in the sum of $233,620.73 which represented the sums paid for fire damage to buildings and contents insured by appellants herein, American Employer's Insurance Company (American) and First State Insurance Company (First State).

Respondent herein, United States Fidelity and Guaranty Company (USF & G), the insurer of a homeowner's policy under which Michael Smith was an admitted insured, then filed the present action seeking a declaration it was not obligated to indemnify Michael Smith for the fire damages or to defend him in the prior suit. This case was submitted to the trial court on the reporter's transcript and exhibits of the former action. On the basis of this evidence, the trial court found Smith's conduct was not negligent, "but was a malicious, intentional act done with a conscious disregard of the rights and safety of others and with a preconceived design to inflict injury," and "as a proximate result of willfully, wrongfully, and maliciously igniting said fire, Smith caused the . . . property insured by defendants . . . to be burned and damaged." The court declared that pursuant to the provisions of Insurance Code section 533 and Civil Code section 1668, USF & G had no obligation to afford coverage to, or defend, Smith.

On appeal American and First State pursue a number of contentions concerning the sufficiency of the evidence and the one "Intentional Tort" exclusion. On the latter issue, the exclusionary provisions of Insurance Code section 533, of Civil Code section 1668, an express exclusion clause of

USF & G's policy and the public policy which negates indemnification to an insured who intentionally causes damage are equated as being indistinguishable. This sweeping assertion, like most generalizations, is faulty, and we perceive that even facially there are distinctions between the provisions of Insurance Code section 533 and the express exclusion of the insurance policy of USF & G.[1]

Moreover, USF & G did not urge in the trial court that noncoverage under its policy was predicated on the express exclusion in the policy. It urged and the trial court so found that Michael Smith's arsonous conduct was wilful within the meaning of Insurance Code section 533 and his insurer, USF & G, was not liable. We address this as the essential issue on this appeal.

## I

There is no purpose in serving up a new set of facts, as they have remained constant. Accordingly, we adopt the statement of facts from our opinion in *American Employer's Ins. Co.* v. *Smith, supra,* 105 Cal.App.3d at pages 96 through 98, with appropriate changes in references to the parties to reflect their status in the present appeal.

"[Michael Smith] set a series of fires in the City of Woodland during the evening hours of October 7, 1974. First, at 7:45 p.m. he ignited a fire in the trash bin at a Value Giant, then 25 minutes later he set fire to the papers on a bulletin board at the post office. A few minutes thereafter papers and wood behind a shed near the Four Seasons were set aflame by [Smith]. Finally, at 9:17, [Smith] set his last fire for the evening, the burning of a storage shed at Aunt Lila's Antique Shop.

"This litigation arises from the fire at the Four Seasons. [Smith] was 16 years, 10 months of age at that time. He testified that he took some boards and leaned them over trash near a shed and then set fire to the trash. He got into a car and went around the block to a vantage point and observed that the roof of the shed was on fire. [Smith] was surprised and scared when he saw that the roof of the shed was on fire, and he called the fire department so that the building would not burn down.[2] [Smith] proceeded to Aunt Lila's and set a storage shed on fire. [Smith] subsequently pleaded guilty to

---

[1]This clause provided: "This policy does not apply: 1(f) to bodily injury or property damage which is either expected or intended from the standpoint of the insured."

[2]"At the time of the trial [Smith] was not certain whether he called the fire department before he set the fire to Aunt Lila's storage shed or after that incident. He was sure, however, that he called about the Aunt Lila's fire."

arson. The corrugated steel material of which the shed at the Four Seasons was composed heated. The fire spread from the shed to the adjacent buildings. As the result of the spreading of the fire Emil and Edward Schmauderer (doing business as Emil's Quality Shoes) were damaged in the amount of $10,110. Theodore C. Muegge was damaged in the amount of $31,423.59. Jack Carter, Harold Sedgwick and Mary Burton (doing business as Burton's Shoes) were damaged in the amount of $131,036.

"At the time of the fire . . . American Employers Insurance Company [American] was the insurer of Emil's Quality Shoes and Theodore C. Muegge. . . . First State Insurance Company [First State] was the insurer of Burton's Shoes. Pursuant to the contracts of insurance [they] paid to their respective insureds the total sums by which they were damaged due to the fire.

"At the time of the fire, [Smith's] parents, Clyde R. and Margaret Smith, maintained a policy of homeowner's insurance with the [plaintiff] United States Fidelity & Guaranty Company [USF & G]. [Smith], as a resident relative of the named insureds, was also insured by the policy. Under the policy [USF & G] is obligated to pay to the insureds all sums they are required to pay to others by reason of liability imposed upon them as the result of damage to property, up to the policy limit of $25,000.

"[USF & G] believed that it was not obligated to indemnify or defend [Smith] since his acts were intentional. Accordingly, it filed a complaint for declaratory relief. The action for declaratory relief and the action by [defendants] against Michael Smith were subsequently consolidated for trial.

"All defendants who had been sued initially, other than Michael Smith, were dismissed from the action during pretrial proceeding. When the matter was set for trial [defendants] dismissed all causes of action against Michael Smith except the negligence cause of action. The matter then proceeded to trial.

"After plaintiffs [American and First State] rested [Smith] moved for a nonsuit on the ground that the evidence clearly showed that his tort was intentional and that evidence showing an intentional tort cannot support a verdict on a negligence cause of action. The trial court agreed and granted the motion. [USF & G] then moved for dismissal of the declaratory relief action without prejudice, stating that in view of the nonsuit the declaratory relief action became moot. The dismissal was granted.

"[American and First State] filed a notice of appeal . . . from both the judgment of nonsuit and the dismissal of the declaratory relief action. [USF

& G] moved for an order dismissing the appeal as to it. . . . [T]his court granted the motion and dismissed the appeal as moot, with the provision that the dismissal as to [USF & G] would not affect the appeal as to Michael Smith."

We concluded that under the circumstances of that case it is not a defense to a negligence cause of action that the evidence showed the tortious conduct of Smith was intentional or wilful. (At p. 102.) We stated that the only issue then before us was Smith's *liability* for the damages caused by the fire; we expressly refrained from considering the issue of whether or not the occurrence was *covered* by the insurance policy issued by plaintiff. (At pp. 101-102.) That issue is now before us.[3]

## II

Insurance Code section 533 provides: "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others."

As this court held in *Evans* v. *Pacific Indemnity Co.* (1975) 49 Cal.App.3d 537, 540 [122 Cal.Rptr. 680], "[t]he rule relating to statutory exclusions from insurance policies, and in particular with respect to section 533 of the Insurance Code, is well settled. Section 533 of the Insurance Code, is a part of every insurance contract and is equivalent to an exclusionary clause in the contract itself." (*Nuffer* v. *Insurance Co. of North America* (1965) 236 Cal.App.2d 349, 356 [45 Cal.Rptr. 918]; *Maxon* v. *Security Ins. Co.* (1963) 214 Cal.App.2d 603, 615 [29 Cal.Rptr. 586].)

"Section 533 . . . reflects the very sound and long standing public policy (also contained in Civ. Code, § 1668) which disapproves of contracts which directly or indirectly exempt anyone from personal responsibility for his own wilful injury to another. The essence of this policy, . . . is found in the following statement of our Supreme Court: 'Section 1668 of the Civil Code[4] and section 533 of the Insurance Code establish a public policy to prevent insurance coverage from encouragement of wilful tort.' (*Tomerlin* v. *Canada Indemnity Co., supra,* 61 Cal.2d [638] at p. 648 [39 Cal.Rptr.

---

[3]Which illustrates that undecided issues in appeals do not die; they simply reappear in a new appeal.

[4]Civil Code section 1668 provides: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

731, 394 P.2d 571].)" (*Evans* v. *Pacific Indemnity Co., supra,* 49 Cal.App.3d at pp. 541-542.)

The basic premise of American and First State that section 533 and the express exclusion in USF & G's policy are identical appears to be based on a misperception of the holding of *Evans, supra,* that section 533 is equivalent to an exclusionary clause in the policy itself. This does not mean that section 533 is the same as the express policy exclusion but rather that it is itself an implied exclusionary clause which by statute is to be read into all insurance policies.

American and First State rely on a number of cases, both California and foreign. However, the California cases are not controlling and the foreign cases are concerned with the applicability of express policy exclusions identical or similar to that in USF & G's policy. The coverage issue before the trial court and this court is not the express exclusion in the policy but the implied exclusion of Insurance Code section 533. In interpreting the language of the express exclusions in the cases cited by American and First State, the courts have distinguished between an intentional act and an intentionally caused injury. ▉ The focus of Insurance Code section 533 is on the intention to do the act which causes the damage rather than the intention to cause the resulting damage, a significant distinction, emphasized in *Cincinnati Ins. Co.* v. *Mosley* (1974) 41 Ohio.App.2d 113 [322 N.E.2d 693], cited by American and First State. In that case, before the court was a policy excluding coverage for "[b]odily injury . . . caused intentionally by . . . the insured." Factually, the insured aimed her car at one person and accidentally struck another. The court determined the exclusion did not preclude coverage under the policy; that to avoid coverage the language of the exclusion would have to read " '[b]odily injury *caused* by intentional acts of the insured. . . .' " (Italics added.) Insurance Code section 533 excludes coverage for "loss caused by the wilful act of the insured." Even under the reasoning of *Mosley, supra,* no coverage under USF & G's policy would be afforded the insureds of American and First State.

At issue herein is not whether Michael Smith specifically intended to cause all the damage which actually ensued from his firelighting activity, as asserted by American and First State, but whether the damage was caused by Michael Smith's wilful act of setting fire to the shed. To avoid coverage for the fire damage at issue, USF & G was required to prove two things pursuant to Insurance Code section 533: (1) causation—that Michael Smith's act in setting fire to the shed *caused* the fire damage to the buildings in question, and (2) that the act of Michael Smith which caused the buildings to burn was wilful within the meaning of section 533.

■ The evidence of causation was direct and virtually undisputed. In addition to the factual summary contained in this court's prior opinion in *American Employer's Ins. Co.* v. *Smith, supra,* 105 Cal.App.3d at pages 96-98, the stipulated record contains the testimony of Gale Hawthorne of the Arson and Bomb Investigation Unit of the State Fire Marshall's Office. Investigator Hawthorne determined the point of origin of the fire which damaged the property at issue was at the corrugated metal shed in the alley behind the Four Seasons building. This is the shed where Smith started one of his fires.

"[O]ne may be guilty of having 'caused' a building to be burned even though he actually sets fire only to a different structure." (1 Witkin, Cal. Crimes, § 465.) In *People* v. *Hiltel* (1901) 131 Cal. 577 [63 P. 919], evidence that the defendant started fires in a wine cellar and tank house was held to support a conviction for arson as to a dwelling located in close proximity to the other structures. If the fire is set wilfully and maliciously, it is irrelevant that some of the damage may not have been intended. (See *People* v. *Green* (1983) 146 Cal.App.3d 369, 379 [194 Cal.Rptr. 128].)

■ The critical question as to causation in intentional torts is whether the actor's conduct is a substantial factor in bringing about the type of harm which he intended from his original act. (See *Tate* v. *Canonica* (1960) 180 Cal.App.2d 898, 907 [5 Cal.Rptr. 28].) " '[N]o consideration is given to the fact that after the event it appears highly extraordinary that it should have brought about such harm or that the actor's conduct has created a situation harmless unless acted upon by other forces for which the actor is not responsible.' " (*Ibid.*; citing comment c to § 279 Rest., Torts.) "[T]he notion of independent intervening cause has no place in the law of intentional torts, so long as there is a *factual* chain of causation." (*Ibid.*)

The evidentiary factual chain of causation in the case before us is overwhelming that Smith's act of setting fire to the shed was not only a substantial factor but the only factor in the fire damage to the adjoining structures.

On the issue of wilfulness, it is undisputed that Michael Smith intentionally set fire to the trash behind the shed of the Four Seasons building.

■ A "wilful act" under section 533 is more than a mere volitional act divorced from its motivation and more than the meaning of that term under traditional tort principles (*Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 887 [151 Cal.Rptr. 285, 587 P.2d 1098]; *Walters* v. *American Ins. Co.* (1960) 185 Cal.App.2d 776, 783 [8 Cal.Rptr. 665]), as asserted by American and First State. However, Smith's act encompassed a great

deal more than a mere volitional act which unintentionally inflicted damage.

The meaning of "wilful act" is analyzed in *Russ-Field Corp.* v. *Underwriters at Lloyd's* (1958) 164 Cal.App.2d 83, 96 [330 P.2d 432]: *"In McKenzie* v. *Scottish U. & N. Ins. Co.,* 112 Cal. 548, 557-558 [44 P. 922], the Supreme Court in discussing the legislative intent in the enactment of section 2629 of the Civil Code, the statutory predecessor of Insurance Code section 533, said: 'The *ordinary* negligence of the insured and his agents has long been held as a part of the risk which the insurer takes upon himself, and the existence of which, where it is the proximate cause of the loss, does not absolve the insurer from liability. But *wilful exposure—gross negligence—negligence amounting to misconduct, etc., have often been held to release the insurer from such liability.*

" 'To set at rest questions involving the different degrees of negligence, and the results following therefrom, we may reasonably suppose was the object of the framers of our Civil Code.

" 'Under section 2629 of the Civil Code [now Ins. Code, § 533] *the nice distinctions often made necessary are dispensed with,* and the general proposition is established that *no form of negligence on the part of the insured,* or his agents or others, leading to a loss avoids the policy, unless it amounts to a *wilful* act on the part of the insured. The code thereby sets at rest a fruitful cause of litigation.' (Emphasis added.)

"A 'wilful act' as used in this statute connotes something more blameworthy than the sort of misconduct involved in ordinary negligence, and something more than the mere intentional doing of an act constituting such negligence."

California courts which have considered Insurance Code section 533 in a factual context dissimilar to that present here have likened a "wilful act" under that section to the intentional commission of a *wrongful act* with " 'a preconceived design to inflict injury.' " (*Clemmer* v. *Hartford Insurance Co., supra,* 22 Cal.3d 865, at p. 887; see also *State Farm Fire & Casualty Co.* v. *Dominguez* (1982) 131 Cal.App.3d 1, 4-5 [182 Cal.Rptr. 109]; *Meyer* v. *Pacific Employers Ins. Co.* (1965) 233 Cal.App.2d 321, 327 [43 Cal.Rptr. 542]; *Walters* v. *American Ins. Co., supra,* 185 Cal.App.2d at p. 783.)

■ In the instant case, the trial court found Smith ignited the fire at the Four Seasons "wilfully, wrongfully, and maliciously" with "a precon-

ceived design to inflict injury." Substantial evidence supports this finding. Smith intentionally ignited the trash behind the building. He placed the trash under boards which were leaning against a shed, indicating an intent to do more than merely start a small trash fire. The shed was attached directly to the buildings which burned. Smith knew what he was doing was wrong. He intended to start a fire and he knew that damage was likely to result. Smith ignited several other damaging fires that same day. Smith pleaded guilty to arson, a crime in which one "willfully and maliciously sets fire to or burns or causes to be burned . . . any structure . . . or property." (Pen. Code, § 451.)

Clearly, Michael Smith's act in causing the fire was well beyond the sort of intentional misconduct involved in ordinary negligence and was wilful within the meaning of Insurance Code section 533.

The California cases upon which defendants rely are not controlling. In *Clemmer* v. *Hartford Insurance Co., supra,* 22 Cal.3d 865, the issue was whether an insured who shot and killed a man had the mental capacity to form the intent to harm the victim. There was no issue as to the specificity of the intent required to make an act "wilful" within the meaning of section 533. However, the court indicated it was not necessary to show a specific intent by the insured to kill his victim, but rather only "a 'preconceived design to inflict injury.'" (At p. 887.)

*Congregation of Rodef Shalom* v. *American Motorists Ins. Co.* (1979) 91 Cal.App.3d 690 [154 Cal.Rptr. 348] was also concerned only with whether the insured had the requisite mental capacity to intentionally cause damage. At issue, however, was whether an express exclusionary clause for "injury . . . or destruction caused intentionally by . . . the insured precluded insurance coverage." The insured minor started a fire in a classroom wastepaper basket which spread throughout the building. The jurors were not properly instructed on how to determine if the insured acted intentionally. The court held the instruction must be in accord with *Clemmer*: the insured does not have the requisite intent if he suffered from a mental disease or defect which deprived him of the capacity to intend to set the fire and cause damage, or which deprived him of the capacity to govern his conduct in accordance with reason. (At p. 697.) In this case, there is no issue of Smith's mental capacity to form the requisite intent.

In gratuitous dicta, the court stated the policy exclusion was only applicable if the intent was to cause damage *beyond* the point of origin of the fire. (At p. 695.) No authority was cited for this statement though an inexplicable reference was made to *Meyer* v. *Pacific Employers Ins. Co.* (1965)

233 Cal.App.2d 321, *supra,* in which there was no intent to cause any damage at all.

In *Meyer* v. *Pacific Employers Ins. Co., supra,* 233 Cal.App.2d 321, the insurer was not relieved of its obligation to indemnify its insured for damages resulting from the insured's trespass. During drilling operations by the insured on its property, vibrations from the drilling damaged adjacent property. The insurer was held obligated to pay, for although the insured's act was "intentional" and even "wrongful" under trespass law, the insured did not intend to inflict any harm thereby.

In construing a policy exclusion identical to the one in this case, the court in *Mullen* v. *Glens Falls Ins. Co.* (1977) 73 Cal.App.3d 163 [140 Cal.Rptr. 605], properly concluded the insurer had a duty to defend an insured who had inflicted injuries in a fight as the insured may have acted in self-defense. An act of self-defense, though intentional, is not an act committed with a wrongful intent to inflict injury. (At pp. 170-171.) The court observed, however, that the policy exclusion would apply to "injuries and damages resulting from acts *involving an element of wrongfulness or misconduct* . . . ." (At p. 171; italics added.)

*Escobedo* v. *Travelers Ins. Co.* (1964) 227 Cal.App.2d 353 [38 Cal.Rptr. 645], involved an insured who fatally injured a pedestrian in an automobile accident and unlawfully left the scene. The incident was within the insurance coverage as the insured did not act with a wilful intent to injure the victim. (At p. 360.)

*Walters* v. *American Ins. Co., supra,* 185 Cal.App.2d 776, is another self-defense case in which the insured did not act with a wrongful or wilful intent to inflict injury.

### III

As noted, the trial court in this case based its decision solely on *statutory* exclusions. However, the policy exclusion has been repeatedly urged by appellants as controlling. We therefore consider the policy exclusion and conclude that it also precludes coverage. Defendants have cited many foreign cases determining the applicability of exclusionary clauses with language similar to that in the U.S.F. & G's policy. However, the cited cases are generally concerned with intentional acts, or even wrongful acts, com-

mitted without any intent to cause harm or without intent to harm the *person* actually injured.[5]

■ There is some split of authority as to whether the intentional injury policy exclusion which exempts from coverage expected or intended damage requires a specific intent on the part of the insured to cause all the resultant damage.[6] We perceive the better and majority view to be that such a specific intent is not required.

A case factually similar to the one at bar is *Unigard Mut. Ins. Co.* v. *Argonaut Ins. Co.* (1978) 20 Wn.App. 261 [579 P.2d 1015], wherein the insured's 11-year-old son, William,[7] broke into a school building, started a fire in a trash can, watched it burn for a time then tried ineffectually to douse water on it. He became frightened, ran away and notified no one of the blaze. It spread and caused $250,000 damage to the building and contents.

As summarized by the court, William testified: ". . . he did not intend or expect to cause damage to the school building but that he did intend to light the fire. At the time of the blaze he knew that fire could spread, and he had previously been involved in a fire-starting venture between two neighborhood garages."

---

[5]*American Ins. Co.* v. *Saulnier* (D.Conn. 1965) 242 F.Supp. 257 (insured threw a bottle intending only to frighten someone; bottle hit and injured someone else); *Ambassador Insur. Co.* v. *Montes* (1977) 147 N.J.Super. 286 [371 A.2d 292] (insured who started fire which killed a tenant of building only intended to damage property, not injure persons); *Caspersen* v. *Webber* (1973) 298 Minn. 93 [213 N.W.2d 327] (insured pushed a woman without any intent to inflict bodily injury); *City of Burns* v. *Northwestern Mut. Ins. Co.* (1967) 248 Ore. 364 [434 P.2d 465] (insured wrongfully moved a body but without any intent to cause widow emotional injury); *Connecticut Indemnity Co.* v. *Nestor* (1966) 4 Mich.App. 578 [145 N.W.2d 399] (young boy who started fire did not intend to damage property); *Eisenman* v. *Hornberger* (1970) 438 Pa. 46 [264 A.2d 673] (insured burned matches to light his way during burglary; a match started a fire, but insured had no intent to start a fire); *Lumbermens Mut. Ins. Co.* v. *Blackburn* (Okla. 1970) 477 P.2d 62 (insured intentionally threw a rock which injured someone, but without any intent to inflict injury upon that person); *Morrill* v. *Gallagher* (1963) 370 Mich. 578 [122 N.W.2d 687] (firecracker thrown into a room caused physical injury to occupant; insured only intended to frighten the occupant); *Smith* v. *Moran* (1965) 61 Ill.App.2d 157 [209 N.E.2d 18] (insured intentionally fired gun which injured victim, with no intent to injure him); *Vanguard Ins. Co.* v. *Cantrell* (1972) 18 Ariz.App. 486 [503 P.2d 962] (insured intentionally fired gun which injured victim, but only with intent to frighten him); *Vermont Mut. Ins.* v. *Dalzell* (1974) 52 Mich.App. 686 [218 N.W.2d 52] (insured threw pumpkin at passing motorist, injuring him; he only intended to frighten the motorist).

[6]See collected cases in Annotation, Liability Insurance: Specific Exclusion of Liability For Injury Intentionally Caused By Insured (1965) 2 A.L.R.3d 1238.

[7]William was admittedly also an insured within the policy.

The policy contained an exclusion for property damage "'which is either expected or intended from the standpoint of *the insured.*'" (579 P.2d at p. 1017.)

In affirming a judgment declaring the exclusion precluded coverage, the court stated: "There is a definite split of authority as to whether the intentional injury exclusion clause which exempts expected or intended damage requires specific intent on the part of the insured to cause the resultant damage. Here, though, there is substantial evidence from which the court could have found that the damage to the school building was expected or intended on the part of the boy despite his in-court declarations to the contrary. Thus, as to William Winkler, the fire damage to the building was the expected or intended result of a clearly intentional act." (At p. 1018.)

In *Butler v. Behaeghe* (1976) 37 Colo.App. 282 [548 P.2d 934, 938] (a bodily injury case) the court stated: "Where coverage is excluded if bodily injury is 'intended or expected' by the insured, such exclusion is inapplicable if and only if the insured acts *without any intent or any expectation of causing an injury, however slight.* And conversely, such exclusion is applicable if the insured acts with the intent or expectation that bodily injury will result *even though the bodily injury that does result is different either in character or magnitude from the injury that was intended.*" (Italics added.)

As stated in another case, the policy exclusion applies where the "insured acted (whether willfully, intentionally or maliciously) for the purpose of causing injury in the person or property in which it resulted. So long as the injury was intended, willed, or maliciously sought, *it is immaterial that an injury of a different nature from that actually contemplated in fact resulted.*" (*Farmers Insurance Group v. Sessions* (1980) 100 Idaho 914 [607 P.2d 422, 426], italics added.) This is the rule generally accepted throughout the country, as to both bodily injury and property damage.[8]

---

[8]See, e.g., *Colonial Penn Ins. Co.* v. *Hart* (1982) 162 Ga.App. 333 [291 S.E.2d 410, 413]; *Home Ins. Co.* v. *Neilsen* (1975) 165 Ind.App. 445 [332 N.E.2d 240, 242-243]; *Iowa Kemper Ins. Co.* v. *Store* (Minn. 1978) 269 N.W.2d 885, 887; *Jones* v. *Norval* (1979) 203 Neb. 549 [279 N.W.2d 388, 391-392]; *Oakes* v. *State Farm Fire & Casualty Co.* (1975) 137 N.J.Super. 365 [349 A.2d 102, 103]; *Parkinson* v. *Farmers Ins. Co.* (1979) 122 Ariz. 343 [594 P.2d 1039, 1041]; *Tal* v. *Franklin Mutual Ins. Co.* (1980) 172 N.J.Super. 112 [410 A.2d 1194, 1196]; *Thrift-Mart, Inc.* v. *Commercial Union Assurance Co.* (1980) 154 Ga.App. 344 [268 S.E.2d 397]; *Willis* v. *Hamilton Mutual Ins. Co.* (Ky.App. 1981) 614 S.W.2d 251, 252.

These cases deal with two forms of exclusionary clauses which typically appear in policies: (1) as in this case, where coverage is excluded for damages "expected or intended from the standpoint of the insured"; or (2) where coverage is excluded for damages "caused intentionally by or at the direction of the insured." The cases make no distinction between these forms for the purpose of determining coverage. (See, e.g., *Iowa Kemper Ins. Co.* v. *Stone, supra,* 269 N.W.2d at p. 887, fn. 3.)

As stated, Smith clearly acted with the wrongful intent to cause damage to the property against which he set the fire. It is immaterial that he subjectively did not expect or intend to cause the extent of damage which actually occurred.[9]

Accordingly, under the exclusionary clause of Smith's insurance policy, there is no coverage for the damages caused by Smith's actions. Our conclusion is "consistent with the reasonable expectations of the parties to the insurance contract and the public policy against 'licensing' intentional and unlawful harmful acts." (*Iowa Kemper Ins. Co. v. Stone, supra,* 269 N.W.2d at p. 887.)

The judgment is affirmed.

Evans, Acting P. J., and Blease, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 25, 1984.

---

[9]The irrelevancy of the extent of damage where some damage was wrongfully intended is not an expression of the tort principal that one is deemed to have intended the natural and ordinary consequences of one's voluntary act. This rule has been rejected as a basis upon which to deny coverage under the type of exclusionary clause in this case. (*Meyer v. Pacific Employers Insurance Co., supra,* 233 Cal.App.2d at p. 326.) Rather, "[i]t is a much more narrow gauge that recognizes the correlation [between act and intent] only where reason mandates that from the very nature of the act, harm to the injured party must have been intended." (*Home Ins. Co., supra,* 332 N.E.2d at pp. 243-244.) In this case, both the nature of the act and the direct evidence indicates Smith intended to damage the building.