**STATES STEAMSHIP COMPANY, a corporation, Plaintiff,**

**v.**

**AETNA INSURANCE COMPANY, a corporation, Defendant.**

No. C–83–2508 SW.

United States District Court,
N.D. California.

May 29, 1985.

Opinion Vacated Sept. 21, 1985.

Peter A. Lindh, Walsh, Donovan & Lindh, San Francisco, Cal., for plaintiff.

Kent J. Clancy, Jess B. Millikan, Derby, Cook, Quinby & Tweedt, San Francisco, Cal., for defendant Aetna Ins. Co.

## MEMORANDUM

SPENCER WILLIAMS, District Judge.

The matter is before the court on plaintiff's motion for summary judgment. The issue is whether containers leased by States Steamship Company and insured by Aetna under an all risk marine policy were at risk of loss or damage when States filed a voluntary petition in bankruptcy. If so, Aetna is liable under the policy's sue and labor clause for costs reasonably incurred to recover them. After careful consideration of the pleadings on file, the evidence in the record, and the arguments of counsel, the court finds that the containers were at risk and, as a matter of law, Aetna is liable under the policy for certain of the costs sought. The question of which particular recovery costs are compensable is deferred to a later day.

## FACTS

States leased some 4500 containers from various lessors. At any given time, the containers were scattered throughout the world in depots, on ships, or elsewhere.

During the latter part of 1978, States encountered financial difficulties. To keep it afloat until it found a buyer, States obtained a line of credit from Crocker Bank. On December 4, 1978, when States informed Crocker that negotiations with a potential buyer had broken off, the line of credit was withdrawn. That day States filed a petition in bankruptcy.

States thereupon ceased to operate in its usual manner. Although voyages in progress were completed and vessels were returned to U.S. ports, States no longer sought to book cargo. A significant number of employees, including most of those involved in container operations, were terminated.

States was obligated contractually to return the 4500 containers to the lessors. States claims that as a practical matter it was unable to do so by virtue of its bankruptcy. Nonetheless, to help discharge its contractual obligations, States assisted the lessors in recovering their equipment by entering into stipulations with them for relief from the automatic bankruptcy stay and providing them with information as to the last known locations of leased equipment in foreign and domestic ports. The lessors' retrieval efforts, which lasted several months and cost more than $200,000, resulted in the recovery of all but approximately 57 containers. The lessors ultimately made claim against States in its bankruptcy proceeding for expenses incurred in recovering this equipment. With bankruptcy court approval, States paid those expenses in full.

By this action, States seeks to recover these and other expenses from Aetna, its insurer. At the time of its filing for bankruptcy, States had in effect with Aetna an

open container policy providing insurance against "all risks of loss or of damage to ... cargo containers" owned or leased by States. Present in that policy was a standard sue and labor clause, which in essence both authorized and required States to sue, labor and travel in order to defend, safeguard and recover the insured containers if they encountered loss or misfortune. Aetna became obligated to bear the expenses reasonably incurred thereby.

States moves for partial summary judgment, arguing that the bankruptcy put the containers at risk within the meaning of its insurance policy. It seeks a ruling that the amounts States paid the lessors for expenses incurred in recovering the leased containers and returning them to lessors' depots are expenses for which Aetna is liable under the sue and labor clause.

ANALYSIS

## I. DOES STATES' CONTRACTUAL OBLIGATION TO THE LESSORS BAR RECOVERY UNDER THE POLICY?

■ States argues that the expenses the lessors incurred in returning the containers from their locations around the world, which expenses States ultimately bore, were expenditures necessary to avoid a loss covered by the parties' marine insurance policy.

Aetna contends, however, that States should be barred from collecting on these claims because States had a pre-existing contractual obligation to the lessors to return their containers to designated locations. In Aetna's view, allowing States to recover against Aetna would convert the marine insurance contract into a performance bond.

In support of its argument, Aetna relies on *Charleston Shipbuilding and Drydock Co. v. Atlantic Mutual Ins. Co.,* 1946 A.M.C. 1611 (Arbitration at N.Y.), and *Einard LeBeck, Inc. v. Underwriters at Lloyds,* 224 F.Supp. 597 (D.Or.1963). Neither of these cases stands for the proposition that a pre-existing contractual duty to a third party would preclude recovery by an assured from its insurer for a covered loss.

In *Charleston Shipbuilding,* a floating drydock, which was insured under a policy containing a sue and labor clause, was damaged while engaged in the launching of a vessel. The assured's claim to recover the costs of removing and relaunching the vessel under the sue and labor clause was rejected by the arbitrator. Although the arbitrator did indicate that the launching of the vessel was the subject of a pre-existing contractual obligation to the vessel's owner, this was not the basis for the denial of the sue and labor claim. The reason the launching expenditures did not come within the ambit of sue and labor clause was that

the steps taken by the assured to complete the launching were not in any sense direct to avert damage to the marine railway, nor directed to the "defense, safeguard and recovery" of the marine railway. They were undertaken with the *sole purpose* of fulfilling the assured's contract obligation with the (vessel's owner).

*Id.* at 1617 (emphasis added).

*Charleston Shipbuilding* therefore does not stand for the proposition that an assured cannot recover for an insured loss which also happens to be the subject of a pre-existing contractual duty to a third party. Nonetheless, it does stand for the proposition, discussed *infra,* that sue and labor charges include only those sums expended to avert or minimized a threatened or on-going covered loss.

Aetna's reliance on *Einard LeBeck* is similarly misplaced. The subject of the all risks insurance in that case was a synagogue which was moved from one location to another. During the move, the building sustained damage which rendered it a constructive total loss. The contractor, who was an assured on the policy, sought to recover under the sue and labor clause of the policy for various items, including the rental value of equipment left in place under the synagogue for a period of months. In the course of its opinion, the court did point out that the equipment remained under and attached to the building in accordance with the contract between the synagogue owner and the contractor, but, again, that was not the basis for the

court's ruling. The sue and labor claim was rejected because the equipment for which rental charges were sought "was never furnished for the purpose of protecting the synagogue from further damage." *Id.* at 598.

Thus, Aetna's argument is not supported by the cases on which it relies. Nor is there any other reason to bar recovery because States had a duty running to the lessors to return their containers and some or all of the expenditures sought to be recouped under the sue and labor clause also may be characterized as the fulfillment of that duty. States' contractual obligations to the lessors in no way void Aetna's obligations to States under the insurance contract. Notwithstanding its obligations to third parties, States, as the named assured, is entitled to collect from Aetna if the marine insurance policy covers its claim.

## II.  IS BANKRUPTCY A RISK COVERED BY THE POLICY?

■ It must be determined next whether bankruptcy of the assured is a risk which an all risks marine insurance contract extends to cover. With some exemptions not pertinent here, the policy at issue provides insurance against all risks of loss or damage to the containers.

It is well-settled than an all risks insurance policy protects against all risks which are not expressly excluded. *Northwestern Nat'l. Ins. Co. v. Chandler Leasing Corp.,* 1982 A.M.C. 1631, 1633 (N.D.Cal.1982). Recovery under such a policy is allowed "for all fortuitous losses not resulting from misconduct or fraud, *unless the policy contains a specific provision expressly excluding the loss from coverage.*" *C.H. Leavell & Co. v. Fireman's Fund Ins. Co.,* 372 F.2d 784, 787 (9th Cir.1967) (emphasis in original).

The Aetna policy does not include an exclusionary clause exempting from coverage those losses due to bankruptcy. Because of the absence of such an express exclusion, the court concludes that bankruptcy is a risk covered by the policy at issue here.

## III.  IS BANKRUPTCY AN EVENT WHICH MAY TRIGGER A SUE AND LABOR CLAUSE?

■ Under the sue and labor clause of a marine insurance contract, the assured is entitled to recover from the insurer those expenses incurred to minimize or avert a loss to the insured subject matter for which the underwriter would be liable under the policy. The underwriter may be liable for certain charges the assured incurs in caring for the property even though no actual loss or damage occurs. The loss which is being or is sought to be avoided must be one caused by the operation of an insured peril. *See* Gilmore, Grant and Black, Charles, *The Law of Admiralty* 75 (2d ed. 1975); Lambeth, R.J., *Templeman on Marine Insurance, Its Principles and Practice* 153–160 (5th ed. 1981); Buglass, Leslie J., *Marine Insurance and General Average in the U.S.* 333–34 (1981). The sue and labor clause "creates an unconditional obligation on the part of the assured to take all reasonable steps to conserve the property." *Einard LeBeck,* 224 F.Supp. at 598.

■ Defendant argues that the retrieval charges for which States seeks to recover are not sue or labor charges because the sums were not expended to avoid or mitigate an insured loss due to an active and imminent peril. Thus, it must be ascertained whether bankruptcy is an event which may trigger the sue and labor clause of an all risks marine insurance policy.

No American authority directly on this point has been brought to this court's attention, nor has the court discovered any on its own. Nonetheless, there is persuasive British authority which indicates that bankruptcy may constitute a peril such that expenses reasonable incurred by the assured to minimize or avert a loss which results or may result from it are recoverable.

In *ICS v. British Traders Ins. Co.,* 1984 Lloyd's Law Reports 154, plaintiffs leased containers to a third party and were insured under a policy containing a sue and labor clause. The lessee, who was required to insure the containers but failed to do so, encountered financial difficulties and was

ultimately adjudged a bankrupt. Plaintiff incurred costs in recovering its containers and made claim under the sue and labor clause.

On appeal, the British court ruled that the test of whether these costs were sue and labor was whether or not in all the circumstances the assured had acted reasonably to avert a loss when there was a risk that the insurers might have to bear it. The court stated that plaintiffs would be entitled to recovery if they "established the existence of a threat of loss of damage, no matter if that threat resulted from the insolvency of the lessee." *Id.* at 157.

Under *British Traders,* then, bankruptcy may qualify as an event which triggers an insurer's liability under a sue and labor clause. In this court's view, the *British Traders* case represents a well-reasoned approach to resolving questions concerning sue and labor clauses and bankruptcy. Its standard therefore is adopted as the applicable one for resolving the matter at hand.

## IV. HAS STATES ESTABLISHED THAT ITS BANKRUPTCY IMPERILLED THE CONTAINERS?

The court turns now to an examination of the evidence to determine whether, as a matter of law, there are no genuine issues of material fact which are in dispute.

States has introduced numerous affidavits and declarations which supports its contention that its bankruptcy caused the leased containers to be at risk. For instance, States' president stated in his declaration that "given the cessation of its operations, the loss of co-operation of its agents, and the lay-off of its employees, State (sic) effectively lost control of its container operations and was no longer, as a practical matter, able to return the approximately 4500 containers that it had on leased from various lessors."

■ To controvert this assertion, Aetna has introduced a copy of States' balance sheet which shows that at the time it filed for bankruptcy, States had substantial liquid cash assets. Aetna argues that because States had cash on hand, the containers were not at risk when the bankruptcy occurred; rather, in Aetna's view, States was financially able to recover the containers but. made an intentional decision[1] to forego that contractual obligation.

■ In the court's view, Aetna's evidence and accompanying argument do not raise a triable issue of fact. The balance sheet as a whole depicts a company whose finances are complex and whose liabilities are vast. States' assets simply were not sufficient to meet those liabilities. After it filed for bankruptcy, laid off its employees and lost the cooperation of its agents world-wide, States did not have the financial wherewithal to continue operating, the amount of its liquid cash assets notwithstanding. The containers therefore were placed at risk of loss or damage.

## CONCLUSION

■ The bankruptcy of States Steamship Company was an event which imperilled some 4500 containers which States had leased from third parties and insured under an all risks marine insurance policy issued by Aetna. Pursuant to that policy, Aetna would have been liable for loss or damage to those containers. Therefore, States was authorized and required by .the sue and labor clause to take reasonable steps to avert the threatened loss.

Lacking the ability to return the imperilled containers on its own, States assisted the lessors in retrieving them. Those were reasonable efforts designed to protect the containers from harm.

The court holds only that, as a matter of law, in light of the facts surrounding this

---

1. The defendant contends that recovery against it is barred by Cal.Ins.Code § 533, which provides that "an insurer is not liable for a loss caused by the willful act of the insured." The California courts "have likened a 'willful act' under that section to the intentional commission of a *wrongful act* with a 'preconceived design' to inflict injury". *U.S. Fidelity and Guar.* *Co. v. Am. Employers' Ins. Co.,* 159 Cal.App.3d 277, 205 Cal.Rptr. 460, 466 (1984) (emphasis in original). Absent extenuating circumstances, and none has been demonstrated here, the inability of a company to cover its liabilities and its filing for protection under the bankruptcy laws do not constitute the type of willful act to which the statute refers.

bankruptcy, the costs States incurred in this endeavor, either directly or by way of reimbursement to the lessors from the bankrupt estate, are the proper subject of a sue and labor claim. It remains to be determined which of the numerous claims at issue in this litigation actually fall within the sue and labor clause and which are subject to the many defenses[2] which the defendant has raised.

Accordingly, plaintiff's motion for partial summary judgment is GRANTED.

IT IS SO ORDERED.

See also, D.C., 60 B.R. 370.

2. Aetna has raised questions concerning whether certain losses occurred during the policy term, whether delays in reporting the losses voided coverage, and whether particular charges actually were incurred for the purpose of avoiding harm to the insured containers.