[Sac. No. 4933. In Bank.—September 3, 1935.]

BABU, Appellant, v. HELEN McDANIEL PETERSEN et al., Respondents.

Ray Manwell for Appellant.

King & King for Respondents.

SEAWELL, J.—This appeal involves the ownership of a 20-acre tract of highly improved agricultural land situate in the fruit and agricultural district of the county of Butte. All the parties to this action are, except one American and one Spaniard, members of the Hindu native races of India, and are admittedly ineligible to citizenship under the laws of the

United States, and therefore are inhibited from exercising or enjoying the right to "acquire, possess, enjoy, use, cultivate, transfer, transmit, and [or] inherit real property, or any interest therein in this state and [or] have in whole or in part the beneficial use thereof", as provided by sections 1 and 2, initiative measure, effective December 9, 1920. (Stats. 1921, p. lxxxiii; Deering's Gen. Laws, 1931, vol. 1, pp. 105 et seq.)

The plaintiff Babu, sometimes known as Baboo, a resident of the county of Colusa, but a native of India, and therefore ineligible to citizenship, filed an action on January 19, 1932, praying for the foreclosure of a mortgage of said land made and executed to him by one Helen McDaniel, who afterwards by marriage became Helen McDaniel Petersen, to secure her promissory note in the sum of $10,000, made, executed and delivered by her to said Babu on January 26, 1927.

Babu alleged that there had been paid on account of principal and interest on said note the sum of $2,628, leaving due and unpaid the sum of $7,372. Julius Gomez, the Spaniard above referred to, was made a party by reason of a grant deed executed and delivered by said Helen McDaniel to him on February 23, 1927, less than a month after she had executed the Babu note and mortgage. In the deed to Gomez she made reference to the Babu mortgage, and also to a mortgage of the prune crop growing on the premises executed by her to Babu on the same day, in the sum of $3,000, and made the deed subject to said mortgages to Babu. On the same day that he received said deed from Helen McDaniel, to wit, February 23, 1927, Gomez executed a mortgage of said real property to Lale Singh and Rala Singh, both natives of India and ineligible to become citizens of the United States.

Helen McDaniel Petersen answered plaintiff's first amended complaint and admitted that she made, executed and delivered the promissory note and mortgage as alleged, but set up as defenses to the action a want of consideration and her alleged non-age, claiming that at the time she executed said promissory note and mortgage, to wit, January 26, 1927, she was an unmarried minor under the age of eighteen years, to wit, of the age of seventeen years. She denied that the sums credited on said note on account of principal and interest, or any part thereof, had been paid by her or by anyone else or at all, or that any sum was due thereon, and alleged that the promissory note and mortgage were void. She denied that Babu or her

grantee, Gomez, or any other of the named parties had any right, title, claim or interest in or to said real property. By way of cross-complaint she alleged that she was the owner in fee of said real property; admitted the execution of the note and mortgage made to Babu and the deed subsequently made to Gomez and plead want of consideration and her minority as a defense in each case, and prayed for a cancellation of said note, and that the court adjudge the Babu mortgage and the Gomez deed to be void, and that she be decreed the owner of said real property and admitted to possession, and for general relief. Babu answered her cross-complaint and the cause came on for trial. Gomez and Lale and Rala Singh having failed to answer or appear their several defaults were entered. The cause was tried and submitted for decision. The court being thereafter of the opinion that Amar Singh and Memill Singh, the latter sometimes referred to as Memo, were necessary parties to the action, ordered the submission set aside and directed plaintiff to amend his amended complaint by making them party defendants and gave to the parties who had already appeared permission to raise by appropriate pleadings such further matters as might be proper. Plaintiff, complying with said order, filed a second amended complaint, bringing in Amar Singh and Memill Singh as party defendants. Plaintiff reincorporated in his second amended complaint all of the material allegations contained in his amended complaint, and, as new matter, alleged that Amar Singh and Memill Singh were comakers of the Babu note jointly with Helen McDaniel. This allegation was doubtless made on the theory that Helen McDaniel was merely the representative or agent of Amar and Memill Singh and stood as a mere receptacle for holding the title of the real owners, Amar and Memill Singh.

Helen McDaniel Petersen answered and cross-complained. She denied any participation on the part of said Singhs in the execution of said note and mortgage but admitted that she signed the note and executed the mortgage and again plead want of consideration and her minority. For the first time she plead the ineligibility of Babu, Amar Singh and Memill Singh, whom she alleged ''are each and every of them Hindus, natives of India, and ineligible to citizenship'', and that the real property described therein was agricultural land. She alleged that said persons last named conspired together to violate the Alien Land Law of this state by colorable transfers to prevent

escheatment of said real property to the state of California, and in furtherance of said conspiracy they procured and caused said Helen McDaniel Petersen to sign the note and execute the mortgage sought to be foreclosed, but alleged that she did not assist in said conspiracy and that said note and mortgage were procured without her knowledge or consent. It is not necessary to notice all of the allegations set forth in her answer as several of them are not material and are of no probative importance. By way of cross-complaint she reincorporated much of the matter contained in her prior pleading. She plead as a defense to her participation in the transactions herein all of the matters already appearing, and alleged that the making of the deed to her, the mortgage given by her and the other transactions in which she participated as the principal actor, were carried forward without her consent. Her final prayer is that all instruments executed by her and which are not to her gain be canceled or decreed void and that her title to the real property be quieted against all persons involved in this action.

Babu answered the cross-complaint by reaffirming all of the material portions of his amended complaint and alleged that the note was given in the manner set forth in his amended complaint; and denied that Helen McDaniel was under the age of eighteen years; denied on information and belief the ineligibility of plaintiff and said Amar and Memill Singh; denied that said Hindus procured and caused said Helen McDaniel to sign said note and mortgage in the furtherance of a conspiracy to violate the Alien Land Law; alleged that he had no knowledge as to the transaction whereby defendant Helen McDaniel executed on February 23, 1927, a grant deed purporting to convey the title of said real property to Julius Gomez and therefore denied the same; admitted that he claimed to be the owner of and entitled to the possession of said real property.

Amar Singh, answering the cross-complaint of Helen McDaniel Petersen, denied that she was the owner in fee simple of said real property and alleged that it was conveyed in trust to her by George W. Kirkpatrick, a hardware merchant, and J. J. O'Rourke, both residents of Colusa County, pursuant to an understanding had between himself, Amar Singh, Memill Singh, Babu and Helen McDaniel; that the execution of said deed to Helen McDaniel, and the execution of said note and

mortgage by Helen McDaniel to Babu were done at the request of Amar and Memill Singh, owners of said property, and constituted but a part of one transaction, and said deed was not delivered to her as a gift; that she gave no consideration therefor and said property was conveyed to her in trust for Amar and Memill Singh. He prayed that the note and mortgage made to Babu be discharged and satisfied, and if there remained anything over and above said lien it be paid to Amar and Memill Singh.

Memill Singh answered the second amended complaint by admitting the execution of the note and mortgage as set forth therein; denied that no part of the principal sum or interest thereon had been paid except the sum of $2,628 or that there was due on account thereof the sum of $7,372; denied that Amar Singh was a party to the execution of said note and mortgage, or that the acts of Helen McDaniel in said transaction were done in the interest of or on behalf of Amar Singh; denied, for want of information, the Gomez transaction. By way of cross-complaint and counterclaim he alleges the execution and recordation of said note and mortgage in the form alleged, and alleges that Helen McDaniel entered into the transaction at his request. He further alleges the farming and cultivation of said land by himself from 1927 to 1933, both inclusive; that the proceeds of the crops, as by the agreement of himself and Babu, were to be turned over to Babu and credited on said mortgage note. On information and belief he alleged that a sufficient sum had been received by Babu to entirely satisfy in full the obligation due by virtue of said promissory note and he asked that said mortgage be declared satisfied and that Babu be required to account for all moneys he had received by reason of said transaction. Babu answered by alleging that the only credits to which Memill was entitled were those endorsed on said note. Helen McDaniel answered Memill's cross-complaint by adopting the allegations already appearing, and making certain denials of certain allegations which cannot affect the main issues of the case. Memill filed a separate answer to the cross-complaint of Helen McDaniel, denying her alleged minority and the allegation that she received no consideration for executing said note and that it was void.

Some twenty-six days prior to the filing of findings and conclusions of law, and a month before judgment rendered,

the court announced in a written opinion that it would find in favor of defendant and cross-complainant Helen McDaniel Petersen, and against defendant Memill Singh, Amar Singh having, at a stage of the proceedings, renounced any claim in or to said premises. Upon the strength of this announcement —the premises being in the possession of Memill Singh and Babu—said Helen McDaniel Petersen asked for the appointment of a receiver and that Babu and Memill Singh be restrained from interfering with the irrigation works, pumps, motor, crops and other valuable property on the premises until further order of the court. No receiver appears to have been appointed by the court but a restraining order was granted.

The court found, upon evidence which clearly appears to us to be totally insufficient to support the material portions of the findings, that all the allegations of the defendant and cross-complainant contained in her answers and cross-complaint are true and that she was the owner in fee of the real property described in the pleadings herein notwithstanding her active participation in what appears to have been a conspiracy to violate the Alien Land Law of this state. The court found it was agreed that, in consummating the passing of title out of Kirkpatrick and O'Rourke, it should be placed in the name of some white citizen of the United States, in order to avoid escheating to the state and that Memill Singh procured and obtained Helen McDaniel as person to hold title; that she was a minor, unmarried and had no *notice* or *knowledge* of any of the transactions to which she was a party; that Babu and Memill Singh, in furtherance of their common conspiracy to evade section 10 of said Alien Land Law, directed Kirkpatrick and O'Rourke to convey by deed said real property to Helen McDaniel and caused her to execute the note and mortgage as described in plaintiff's complaint. It was further found that Helen McDaniel signed said note and mortgage "without understanding their legal effect or comprehending the situation that they were intended to cover, and she acted without notice or knowledge of Memill Singh's rights or claim to the real property"; that Babu and Memill Singh had no intention of conferring any benefit upon Helen McDaniel, but it was their "purpose to make her a trustee of the legal title for the benefit of Memill Singh and Babu, and all without the knowledge or consent of said

minor'', and said conveyances were so made for the purpose of concealing Memill Singh's title. It was found that Amar Singh, Memill Singh and Babu are all ineligible to become citizens of the United States; that ever since the making of said deed and mortgage Memill Singh and Babu have been continuously in the possession of said premises. It was further found that Helen McDaniel received no consideration for executing said note and had no notice that the property had been placed in her name until the foreclosure proceedings were commenced, some five years thereafter, and she had no knowledge of and did not join in said conspiracy to violate the Alien Land Law. The court further found that in furtherance of a conspiracy to evade the Alien Land Law said Babu and Memill Singh caused and procured the said Helen McDaniel to execute the Gomez deed for which she received no consideration. The court concluded that none of the parties named in the action except Helen McDaniel had any estate or interest in said premises; that the Babu note and mortgage, and the Gomez deed, were void, and that Helen McDaniel is the owner in fee and entitled to the possession of said premises. Judgment was accordingly entered, with costs taxed in her favor against Babu and Memill Singh. A writ for the possession of said premises directed to the sheriff was ordered issued by the court.

To better understand the transaction it may be well to give the origin and the history and devolution of title of the land in controversy as it appears of record. Said Singhs, in 1920, purchased from A. F. Hansen and wife and O. C. Sweeney forty acres of land, at the agreed price of $24,000. Twelve thousand dollars of the purchase price was paid down and a mortgage given back for the balance and the Singhs went into possession. Memill Singh, and perhaps Amar Singh, met with reverses in the production of rice, and the interest remained unpaid. Hansen and Sweeney finally demanded their money or a conveyance back of said land. Memill Singh was well acquainted with Kirkpatrick and O'Rourke and arrangements were made with them whereby the Hansen and Sweeney indebtedness was paid and they took a deed absolute in form from the Singhs of said premises. It was the understanding of the parties that the deed was in fact given as security for the money advanced by Kirkpatrick and O'Rourke, to wit, the sum of $10,000, and would be treated

as a mortgage. There is no dispute of the fact that the original forty acres in the transaction was afterward divided and the $10,000 mortgage was made on the acreage involved in this controversy, which consists of twenty acres and was Memill Singh's half of said forty acres. Finally Kirkpatrick and O'Rourke demanded their money and the Singhs being unable to meet the demand, Memill Singh, in particular, sought out Babu and he agreed to come to their rescue. A deed made directly to Babu by Kirkpatrick and O'Rourke would, upon the face of the records, have given the transaction the appearance of a plain violation of the Alien Land Law. Helen McDaniel, whose mother was married to Bames, a native of India, was selected as the person who should act as the grantee of Kirkpatrick and O'Rourke. Both Helen and her mother are white persons but were associates of the race of persons commonly known as Hindus. Memill Singh had lived at the same house occupied by Helen McDaniel, her mother, and Bames, and he had known Helen McDaniel since she was eight or nine years of age, and he regarded both daughter and mother as his very good friends. At the time of the Babu-Singh transaction Helen was living with her mother and stepfather Bames who, it appears, was having some trouble growing out of another land transaction. It was agreed and understood by Memill and Amar Singh, Helen McDaniel and her mother beyond any reasonable doubt, that Babu was to pay off the Kirkpatrick and O'Rourke indebtedness and place himself in the position of a mortgagee, with Helen aiding as a shield of protection for Babu and Memill Singh. To accomplish this plan Helen McDaniel was selected as the nominal owner, grantee and mortgagor of the land. To evade the Alien Land Law Kirkpatrick and O'Rourke were instructed to make the deed to her, rather than to Memill Singh, who was conceded to be the real owner and whose ownership Babu was attempting to protect. The several claims of Babu, Memill Singh and Helen McDaniel must prevail or fail accordingly as the interest of each was or was not procured through illegal channels, or by and through the participation of such claimant in a conspiracy to violate the provisions of sections 1, 2 and 10 of the Alien Land Law, which inhibits aliens ineligible to citizenship from acquiring, possessing, enjoying, using, cultivating, transferring or transmitting agricultural

lands and makes every person who conspires to violate said inhibitory provisions guilty of a crime and subjects the lands involved in the unlawful enterprise to escheatment to the state.

The story of the transaction as told by the witnesses and as evidenced by the solemn acts, such as the execution of notes, deeds, mortgages, real and personal, makes it certain that the provisions of said law were flagrantly violated by all the persons herein making claim to said lands. Helen Mc-Daniel makes claim to the land, practically admitting that she has no moral right to it, but bases her claim on the invalidity of a transaction which she assisted in fabricating. Her motive is well illustrated by the position which she now boldly takes, having passed by a number of years her alleged minority. Her testimony was that she now affirms the deed which conveyed the property to her, but repudiates the note and mortgage which she executed to Babu and which remained recorded for several years. Her testimony is that she had no recollection of signing the promissory note or executing or acknowledging the mortgage, or the crop mortgage, or executing a later deed made to another person of the same real property. She did not dispute her signature to the several instruments, doubtless for the reason that the physical facts would have refuted her denials on material matters. Her testimony is that the above-mentioned transactions were all consummated without her knowledge or consent. Not only this, but she claims that she had no knowledge of the above transactions in which she played a leading part until she was served by summons in the action brought by Babu against her some five years thereafter. She was then past twenty-two years of age. There is nothing in the evidence to indicate that she was mentally subnormal or mentally deficient. She had attended the Chico and West Gridley public schools in her girlhood years and was married at the age of nineteen years. To have acknowledged conscious participation in the acts she committed would have been an acknowledgment of conspiring to violate the Alien Land Law and therefore would have barred any claim to ownership of said real property. Her only possible chance to hold title was to repudiate participation in the transaction which was the origin of her title and set up the defense that she had not attained her majority and the persons who had made her grantee were both *in pari delicto* and

therefore neither would be heard to question her title. This, in short, is the theory on which she hopes to own and possess said real property. ▇ That the execution of the deed to Helen and the making of the note and the execution of the mortgages by her to Babu were each a part of one transaction is beyond question. All were made on the same day and were parts of the same transaction and were executed in further-ance of a common object. It is not necessary, for the reason that Helen is barred by her participation in the transaction by the provisions of the Alien Land Law, to make comment upon the general rule of equity that " 'a party cannot apply to his own use that part of the transaction which may bring to him a benefit, and repudiate the other, which may not be to his interest to fulfill. Thus it has been held that an infant cannot avoid a mortgage and approve a deed when both are made at one and the same time, relate to the same property and go to make up one transaction. If the mortgage be avoided under the plea of infancy the deed becomes of no effect. (*Heath* v. *West*, 28 N. H. 101, 108.)' . . . But what the rules of equity would not permit them to do if they had attained their majority they cannot be permitted to do now through their guardian *ad litem*." (*Peers* v. *McLaughlin*, 88 Cal. 294 [26 Pac. 119, 22 Am. St. Rep. 306].)

▇ Her attempt to avoid the effect of her acts, upon the ground that she had no recollection or knowledge that she had taken any part in the consummation of the illegal trans-action herein set forth, rests upon such questionable ground as to render it inherently improbable, unusual and unnatural, measured by the rules by which human motives, purpose and conduct are to be interpreted. The claim of lapse of memory, or lack of knowledge of the purposes or motives of the parties engaged in the conspiracy, are so inherently improbable as to refute any claim of verity. Not only do the physical features of the transaction destroy the effect of her testimony but she is flatly contradicted by other witnesses, whose testi-mony is not inconsistent with human experience in the trans-action of ordinary business.

The attorney who drew the papers in question testified that Babu's only interest in the matter was to protect the loan which he desired to make to save Memill from a great loss which he would suffer if he failed to raise the money to pay Kirkpatrick and O'Rourke their demand. All of the parties

had been at his office in consummation of the transaction at various times and Helen and her mother were present at the time the note was signed and the mortgage was executed. In fact he took Helen's acknowledgment of the mortgage. He asked her mother in Helen's presence and hearing if Helen was past eighteen years of age and the mother replied that she was. Helen could not have helped hearing the interrogatory and the reply. She admitted that he had asked her age on one occasion but said she did not recollect that it was at the time she executed the mortgage. Counsel for Helen asked said attorney if in his opinion Helen was aware of the act in which she was engaged and his answer was that in his opinion she knew what she was doing and she knew that she was signing the mortgage. She had been in his office upon several occasions, as had Memill, and several of the other parties, arranging the form that the transactions would take. He was certain that Helen and her mother were present and his recollection is Bames and Memill were also present. Memill testified that he had talked the whole matter over from time to time with Helen and her mother and Helen had agreed to take the deed. Babu significantly made the observation and inquiry when he was asked to make the loan: "This is an Alien Land Law. Maybe too much trouble. Who you give the deed to?" However, the whole situation was talked over in the lawyer's office, and the deed was made to Helen for the very definite purpose of circumventing the following provision of the Alien Land Act: "Every transfer of real property or of an interest therein, though colorable in form, shall be void as to the state and the interest thereby conveyed or sought to be conveyed shall escheat to the state as of the date of such transfer" if the property interest involved is of such a character that an alien is inhibited from acquiring, possessing it, etc., as therein provided. █ A *prima facie* case is made out upon proof of the taking of the property in the name of a person other than the persons inhibited by said act if the consideration is paid or agreed or understood to be paid by an alien ineligible to citizenship; or of the execution of a mortgage in favor of an alien ineligible to citizenship, if such mortgagee is given possession, control or management of said property. (Sec. 9, Alien Land Act.) Memill continued by virtue of said transaction to "possess, enjoy, use, cultivate" and deal with said property as the

absolute owner thereof, in violation of the express provisions of law. The testimony of said attorney, Memill, Babu and even Helen and her mother, cannot be read and reconciled with any other rational conclusion than that Helen and her mother, who were identified with the Hindu colony, were guilty participants in the transaction which placed Babu and Memill in the occupancy and possession of said agricultural lands.

The question of Helen's age is not material except to the extent that it was admitted that she was past seventeen years of age and was therefore legally responsible for her conduct involving the commission of a conspiracy to defraud. All persons are capable of committing crimes except children under the age of fourteen, in the absence of clear proof that at the time of committing the act charged against them they knew its wrongfulness. (Pen. Code, sec. 26, subd. 1.) That defendant and cross-complainant who was past seventeen years of age at the time she accepted said deed and executed said mortgage, comes within the provisions of section 10 of said Alien Land Act there can be no doubt. Said section provides: "If two or more persons conspire to violate any of the provisions of this act they are punishable by imprisonment in the county jail or state penitentiary not exceeding two years or by a fine not exceeding five thousand dollars, or both." No civil right can be predicated upon the violation of a criminal statute.

Defendant and cross-complainant has no title to quiet. She is barred also by the maxim of equity that a claimant cannot prevail on the weakness of his adversary's title but must stand or fall upon the strength of his or her title.

It seems very clear upon the case presented that all of the parties to this action are *in pari delicto,* and the court will not aid any of them to consummate their illegal design. It is a cardinal rule of equity that in such a case the law will leave them where it found them.. The court did aid defendant and cross-complainant in acquiring possession of the real property in suit. It will undo what it has wrongfully done and restore as near as practicable the parties to the position which they occupied at the time the law intervened.

That portion of the judgment adjudging Helen McDaniel Petersen to be the owner in fee and entitled to the possession of the real property described in the judgment and quieting

her title thereto and allowing her costs in the trial court is reversed. The writ of possession is annulled. Neither side is granted any relief by reason of the action filed herein. Each side will bear its own costs on appeal.

The state in a special proceeding is the only party that may maintain an escheat proceeding. Section 7 of said act provides: "The attorney-general or district attorney of the proper county shall institute proceedings to have the escheat of such real property adjudged and enforced in the manner provided by section four hundred seventy-four of the Political Code and title eight, part three of the Code of Civil Procedure. Upon the entry of final judgment in such proceedings, the title to such real property shall pass to the state of California as of the date of such acquisition in violation of the provisions of this act."

Let proceedings be taken not inconsistent herewith.

Curtis, J., Preston, J., Langdon, J., Waste, C. J., and Shenk, J., concurred.