[No. H002982. Sixth Dist. Sept. 23, 1988.]

FIRE INSURANCE EXCHANGE, Plaintiff and Appellant, v. ROBERT ABBOTT et al., Defendants and Respondents.

[No. H003275. Sixth Dist. Sept. 23, 1988.]

FIRE INSURANCE EXCHANGE, Plaintiff and Appellant, v. ROBERT SHREVE et al., Defendants and Respondents.

**COUNSEL**

Raoul D. Kennedy, Stephen A. McFeely, Gloria J. Garland, Crosby, Heafey, Roach & May, Ralph E. Mendell and Campbell, Warburton, Britton, Fitzsimmons & Smith for Plaintiff and Appellant.

Gerald Z. Marer, John F. Schuck III, Anthony M. Boskovich, Marer, Marer & Schuck, Richard Alexander, Alexander & Bohn and Bruce W. Nickerson for Defendants and Respondents.

**OPINION**

**AGLIANO, P. J.—**

1. *Introduction*

Was the trial court required to infer from adult criminal sexual misconduct with a child that the adult intended to injure the child? A finding of such intent precludes insurance coverage due to statutory and policy exclusions for intentionally caused injuries. In these two cases consolidated for purposes of oral argument and decision, Fire Insurance Exchange (insurer) seeks declarations that it is not required to indemnify its insured, Robert Abbott, or defend its insured, Robert Shreve, in underlying civil actions by minors[1] seeking damages due to insureds' sexual misconduct. In both cases,

---

[1] We do not name the victims or their families to protect their privacy.

the trial court found insurance exclusions inapplicable, crediting psychiatric evidence offered to show that insureds did not intend to injure the minors they sexually molested.

We explain below why we will reverse both judgments.

2. *Facts*

A. *Abbott (H002982)*

On June 17, 1983, Abbott engaged in sexual misconduct with a six-year-old girl. He reached inside her pants and fondled her thigh. She complied with his request to touch his penis, but refused his request to kiss it. Abbott testified he had become exposed when he sat in a child's chair after fixing a movie machine which a number of children were watching in his house. He acted on a sudden feeling of sexual arousal after eye contact with the girl. His penis contacted her face when he came to his senses, felt ashamed, stood up, and left the room.

On November 9, 1983, in the underlying criminal case Abbott pled no contest to a felony charge of "willfully and lewdly" committing "any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child" in violation of Penal Code section 288, subdivision (a).

On December 19, 1983, the girl filed a civil case against Abbott alleging negligent and intentional sexual molestation resulting in personal injuries including emotional and mental distress. The negligence claim alleged Abbott's "mental incapacity."

Prior to the incident, Abbott purchased renter's insurance from insurer affording liability coverage up to $100,000 for accidents. The policy defines "accident" as "a sudden event . . . resulting in bodily injury . . . neither expected nor intended by the insured."

At Abbott's request, insurer retained counsel to defend him in the underlying civil case, but reserved its rights. At the close of the girl's case-in-chief, she withdrew her intentional tort claim. The court granted her motion for a directed verdict of negligence and instructed the jury, regarding

the girl, to decide only the amount of her damages. The jury awarded her $125,000 in December 1984.[2]

Insurer subsequently brought this declaratory relief action against Abbott and the girl alleging, among other things, that Abbott's conduct is not covered by his renter's insurance policy. Abbott and the girl answered insurer's complaint by alleging that Abbott's actions resulted from mental incapacity or emotional distress and were not intentional or intended to harm the girl.

One of the issues severed for court trial was whether insurer has a duty to indemnify Abbott for the judgment in the underlying civil case.[3]

The evidence recited above was presented in the court trial of the declaratory relief action. Additionally, a psychiatrist and a psychologist who interviewed Abbott were called by him as expert witnesses to testify as follows. Abbott is a pedophile, a type of child molester who prefers prepubescent children to arouse or gratify his own sexual desires. Like other pedophiles, he thought sexual contact with a child was harmless or even mutually beneficial and pleasurable, not harmful. He lacked the mental capacity to govern his sexual attraction to children in accordance with reason. Denial of this sexual interest is part of his psychological makeup.

The psychologist testified that Abbott has an impulsive disorder of pedophilia. Unlike a predatory pedophile who creates situations to interact with children, Abbott is regressed and erupted in a sudden manner that surprised him. His self-control was impaired and he acted without forethought of sexual gratification. He did intend his physical acts. The psychiatrist testified that Abbott did have sufficient volitional control to satisfy his own lust by touching the child or asking the child to touch him.

After court trial, the trial judge concluded that, although Abbott's conduct had violated Penal Code section 288, subdivision (a), insurer was required to indemnify him based on the following findings. "This Court accepts the psychiatric testimony proving that Abbott is mentally ill and, in fact, had no intent to harm the . . . girl. . . . [¶] [Insurer] is obligated to provide coverage to . . . Abbott for the molestation of [the girl], which this

---

[2] The jury also awarded the girl's mother $50,000 for negligent infliction of emotional distress, but the trial court granted Abbott a judgment notwithstanding the verdict on the mother's claim and we affirmed this ruling in an unpublished opinion (H000413) filed November 4, 1986.

[3] Our conclusions about the policy exclusion make it unnecessary to consider evidence or arguments concerning possible rescission of Abbott's policy due to noncooperation in his defense in the underlying civil action, the other issue severed for court trial.

Court finds [occurred] as a result of Abbott's mental incapacity. Abbott's conduct was a sudden event which resulted in bodily injury that was neither expected nor intended by him, thereby meeting the policy's definition of accident conduct [*sic*]."

## B. *Shreve (H003275)*

Shreve commenced a sexual relationship with a 14-year-old boy in mid-June 1983. The boy was a ninth-grade public school student in a class taught by Shreve during the 1982-1983 school year. On the last day of that school year, the boy was discussing girls with Shreve when Shreve said if worse came to worse, the boy could always take this out and wave it at them. Shreve illustrated his remark by grasping the boy's penis through his pants. The boy was surprised, but felt it was a friendly gesture and continued talking with Shreve for a while. At the time, the boy felt that Shreve was his only friend and was very supportive.

Their relationship became overtly sexual during the summer of 1983 when Shreve called the boy to help him with a school project. While they were alone together in a classroom, Shreve masturbated the boy. Shreve felt driven to do so and intended to do so.

Shreve massaged and masturbated the boy several more times during summer vacation. At least once they engaged in mutual oral copulation. This sexual relationship continued throughout the boy's tenth-grade school year, 1983-1984. Shreve often masturbated the boy in his office during the lunch hour, sometimes through his pants. (Shreve minimized the frequency of these contacts.) According to the boy, Shreve sodomized him once in October 1983 in a classroom after school. On this occasion, Shreve furnished blankets and lotion. Shreve denied sodomy.

On February 19, 1985, in the underlying criminal case, Shreve pled guilty to a felony charge of being a "person over the age of 21 years who participates in an act of oral copulation with another person who is under 16 years of age" in violation of Penal Code section 288a, subdivision (b)(2).

On August 15, 1985, the boy and his family filed a civil case against Shreve alleging negligent sexual molestation resulting in personal injuries including mental and emotional distress. The negligence claim alleged Shreve's mental incapacity and disturbance and psychological disability.

Prior to commencement of this sexual relationship, Shreve purchased homeowner's insurance from insurer affording liability coverage up to $100,000 for accidents. The policy definition of "accident" is the same as in

Abbott's policy (p. 1015, *ante.*) It also excludes coverage of bodily injury "[a]rising as a result of intentional acts of an insured."

At Shreve's request, insurer retained counsel to defend him in the underlying civil case. Pursuant to a reservation of rights, on November 19, 1985, insurer filed this declaratory relief action against Shreve, the boy and his family, alleging that Shreve's conduct is not covered by his homeowner's insurance policy because it was intentional. Shreve answered insurer's complaint by alleging that his conduct was caused by a mental disease or defect depriving him of the capacity to cause the resulting damage or harm and was not intentional. The boy and his family answered insurer's complaint by alleging that due to mental incapacity and emotional distress, Shreve never expected or intended to harm them.

The evidence recited above was presented in a court trial of this declaratory relief action. Additionally, Shreve testified that he did not intend to harm the boy in any way. The same psychologist who testified about Abbott interviewed and testified about Shreve as follows. Shreve has been basically homosexual since adolescence but has repressed it and is unhappy about it due to a fundamentalist background. He married and had children in hopes of ending his homosexual orientation. He is also compulsive and bottles up his feelings, which occasionally overwhelm his control. He feels comfortable with adolescent boys because he himself is a teenager emotionally. He lacked the mental capacity to govern his sexual attraction to the boy in accordance with reason. He believed the sexual contact was enjoyable and not harmful to the boy. Even though the relationship continued over a year, Shreve was acting impulsively and compulsively.

A clinical sexologist who had interviewed Shreve was called by insurer to testify. He basically agreed with the psychologist's description of Shreve, in particular that Shreve lacked the mental capacity to govern his sexual activities with the boy in accordance with reason. Shreve's mental state was comparable to temporary insanity in that he was unaware while involved with the boy of the difference between right and wrong. He did not think Shreve was compulsively attracted to children or teenagers as a primary sexual outlet, but did think Shreve's conduct with the boy resulted from an irresistible impulse arising from the circumstances.

After court trial, the same trial court concluded that, although Shreve's conduct had violated Penal Code section 288a, subdivision (b)(2), insurer was obliged to defend and indemnify him based on the following findings. "The expert psychiatric testimony . . . is in complete agreement that at the time of the molestations . . . Shreve suffered from a recognized psychiatric disorder known as ego dystonic homosexuality, which was equivalent to an

addiction and which deprived . . . Shreve of the mental capacity to govern his conduct in accordance with reason and to cause harm to [the boy]. [¶] At no time did . . . Shreve ever intend to harm [the boy]. [¶] . . . Shreve's conduct was neither willful nor intentional because he suffered from a mental disease or defect which denied him the capacity to govern his conduct in accordance with reason and from intending [*sic*] injury."[4]

## 3. *Uninsurability of Willful and Intentional Acts in General*

■ Insurance Code section 533 provides: "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured . . . ." (See also Civ. Code, § 1668.) This section is treated as an exclusionary clause in every insurance contract. (*Evans* v. *Pacific Indemnity Co.* (1975) 49 Cal.App.3d 537, 540 [122 Cal.Rptr. 680], and cases there cited.)

It is settled that "wilful act" in section 533[5] means "something more than the mere intentional doing of an act constituting [ordinary] negligence." (*Russ-Field Corp.* v. *Underwriters at Lloyd's* (1958) 164 Cal.App.2d 83, 96 [330 P.2d 432].) The Supreme Court in *Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 887 [151 Cal.Rptr. 285, 587 P.2d 1098], endorsed a "clear line of authority in this state to the effect that even an act which is 'intentional' or 'willful' within the meaning of traditional tort principles will not exonerate the insurer from liability under Insurance Code section 533 unless it is done with a 'preconceived design to inflict injury.' (*Walters* v. *American Ins. Co.* (1960) 185 Cal.App.2d 776, 783 . . . ; see generally *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 273-274, fn. 12 [54 Cal.Rptr. 104, 419 P.2d 168] . . . .)"

*Clemmer* illustrates this interpretation of section 533. There, heirs of a decedent obtained a wrongful death judgment against the killer, who had been convicted of second degree murder. The killer's insurer resisted the heirs' action against it on the grounds the killing was a willful act excluded from coverage by section 533 or a policy exclusion for " 'any act committed by . . . the insured with intent to cause personal injury.' " (22 Cal.3d 865, 873, fn. 5.) A jury returned a special verdict finding the killing was covered. (*Id.* at pp. 872-873.) The trial court granted insurer's motion for a new trial based on insufficiency of the evidence, but the insurer appealed from the

---

[4] We observe that Shreve's mental state will presumably afford no defense to the underlying action due to Civil Code section 41, which provides: "A minor, or person of unsound mind, of whatever degree, is civilly liable for a wrong done by him, but is not liable in exemplary damages unless at the time of the act he was capable of knowing that it was wrong."

[5] Unspecified section references are to the Insurance Code.

trial court's denial of a judgment notwithstanding the verdict. (*Id.* at p. 873.)

The Supreme Court first determined that the heirs were not collaterally estopped by the second degree murder conviction. (22 Cal.3d at pp. 873-877.) Next, against the insurer's contention the killing was a willful act as a matter of law, the court found that the following evidence substantially supported the verdict and the court's denial of a judgment notwithstanding the verdict. A psychiatrist testified that the killer was a paranoid personality who, at the time of the shooting, "did not have the mental capacity to deliberate and premeditate or to form the specific intent to shoot and harm the victim and did not understand the consequences of his act, being then directed by paranoid delusions." (*Id.* at p. 878.) The jury was properly instructed to determine whether the killer was mentally incapable due to disease or defect of governing his own conduct and intending to shoot and harm his victim. (*Id.* at pp. 886-887.)

Thus, "wilful" in section 533 does not have the same meaning given "willfully" in Penal Code section 7, subdivision 1, namely "when applied to the intent with which an act is done . . . , implies simply a purpose or willingness to commit the act . . . . It does not require any intent to violate law, or to injure another, or to acquire any advantage." It has been held that a battery conviction for "any willful and unlawful use of force or violence upon the person of another" (Pen. Code, § 242) does not necessarily involve the type of "wilful act" excluded from coverage by section 533. (*Allstate Ins. Co.* v. *Overton* (1984) 160 Cal.App.3d 843, 848-850 [206 Cal.Rptr. 823]; compare *Evans, supra,* 49 Cal.App.3d 537, 540-541, where coverage was excluded after a conviction of assault by means of force likely to produce great bodily harm (Pen. Code, § 245, subd. (a)) when the trial court additionally found a willful and intentional battery with intent to inflict harm.) Borrowing terminology from criminal law, a "wilful act" under section 533 involves a specific intent to injure or harm, not merely a general intent to perform the act. (Cf. *Allstate Ins. Co., supra,* 160 Cal.App.3d 843, 849.)[6]

The same interpretation is given to express policy exclusions for injuries caused "intentionally" by the insured. (*Congregation of Rodef Shalom* v. *American Motorists Ins. Co.* (1979) 91 Cal.App.3d 690, 695, fn. 2 [154 Cal.Rptr. 348].) In *Walters, supra,* 185 Cal.App.2d 776, cited with approval in *Clemmer,* an insurer was required to indemnify its insured for settling a civil claim of battery, despite a policy exclusion for injury caused intention-

---

[6] *United States Fid. & Guar. Co.* v. *American Employer's Ins. Co.* (1984) 159 Cal.App.3d 277 [205 Cal.Rptr. 460], seems to both reject (*id.* at p. 284) and embrace (*id.* at pp. 285-287) this interpretation of section 533.

ally by the insured. (*Id.* at p. 779.) The court reasoned that an intentional act was not necessarily excluded from insurance coverage if, as indicated by the evidence, it was committed in self-defense without excessive force or any element of wrongfulness or misconduct. (*Id.* at pp. 783-784.) In *Gray, supra,* 65 Cal.2d 263, the court held that an insurer was obliged to defend its insured against a civil assault claim, despite a policy exclusion for injury caused intentionally by the insured (*id.* at p. 273), because the insured "might have been able to show that in physically defending himself, even if he exceeded the reasonable bounds of self-defense, he did not commit wilful and intended injury, but engaged only in nonintentional tortious conduct." (*Id.* at p. 277.)

Modern insurance policies have replaced the exclusion of injuries caused intentionally by the insured with an exclusion, similar to the policies in issue, of injuries "expected" or "intended by the insured." (Annot. (1984) 31 A.L.R.4th 957, 971-972.) We will assume for purposes of further discussion, as we did in *Grain Dealers Mutual Ins. Co.* v. *Marino* (1988) 200 Cal.App.3d 1083, 1086, 1088 [246 Cal.Rptr. 410], that this exclusion generally and the term "intended" specifically should be given the same interpretation as the earlier exclusion and section 533, since insurer does not contend otherwise.[7] In *Grain Dealers Mutual Ins. Co.,* we adopted the reasoning of *Walters* and *Clemmer,* holding that insurance coverage was not necessarily excluded by evidence that the insured had shot two people, one fatally, when there was other evidence that he might have done so accidentally or in self-defense. (*Id.* at p. 1088.) ▪ We assume that the policies' definition of accident as "a sudden event . . . resulting in bodily injury . . . neither expected nor intended by the insured" excludes from insurance coverage only conduct by the insured which was subjectively intended to harm or injure.

---

[7] Consequently we need not resolve a conflict in California cases interpreting similar exclusions. Other Courts of Appeal have held (*Mullen* v. *Glens Falls Ins. Co.* (1977) 73 Cal.App.3d 163, 169-171 [140 Cal.Rptr. 605]) and assumed (*State Farm Fire & Casualty Co.* v. *Dominguez* (1982) 131 Cal.App.3d 1, 4-5 [182 Cal.Rptr. 109]) that this policy exclusion is coextensive with section 533 and earlier exclusions for intentional injury, while still others have held that this policy exclusion refers only to the insured's general intent to act and not any specific intent to injure. (*United States Fid. & Guar. Co., supra,* 159 Cal.App.3d 277, 288-291; accord *Royal Globe Ins. Co.* v. *Whitaker* (1986) 181 Cal.App.3d 532, 537-539 [226 Cal.Rptr. 435]; *Commercial Union Ins. Co.* v. *Superior Court* (1987) 196 Cal.App.3d 1205, 1208-1209 [242 Cal.Rptr. 454].) There is a similar split in authority from other jurisdictions. (See *United States Fid. & Guar. Co., supra,* 159 Cal.App.3d 277, 289, fn. 6; Annot., *supra,* 31 A.L.R.4th 957, § 5, pp. 983-999; cases discussed *post* in part 4B.)

### 4. *Insurability of Adult Criminal Sexual Misconduct With Minor*

#### A. *California Authority*

 Insurer contends that when an adult engages in criminal sexual misconduct with a minor, an intent to injure must be inferred as a matter of law. All parties claim to find support in *Allstate Ins. Co.* v. *Kim W.* (1984) 160 Cal.App.3d 326 [206 Cal.Rptr. 609], the leading California case on the insurability of adult criminal sexual misconduct with minors. There in the underlying civil case, the minor alleged that the insured had intentionally and maliciously sexually assaulted her for the purpose of causing her emotional distress. (*Id.* at pp. 329, 334.) In the declaratory relief action, the insurer alleged more specifically that the insured had assaulted and battered the minor and others " 'for his own sexual gratification' " in violation of Penal Code section 288. (*Id.* at p. 330.) The insured's answer admitted his violations of Penal Code section 288. (*Ibid.*)

Based on such pleadings, the appellate court affirmed a judgment on the pleadings finding no insurance coverage. The policy excluded coverage for " 'bodily injury . . . intentionally caused by an insured person' " (160 Cal.App.3d at pp. 329-330), but the appellate court relied mainly on section 533. (*Id.* at p. 334, fn. 4.) *Kim W.* recognized that section 533 excludes only acts done with "a ' "preconceived design to inflict injury" ' " (*id.* at pp. 333-334), not where "the resulting damage or injury is not intentional and is unexpected." (*Id.* at p. 331.) But the court pointed out that this principle had not been applied to require "an insurer to pay for damages resulting from a wilful sexual assault by its insured. [Fn. omitted.]" (*Id.* at p. 332.)

The court's conclusion of noncoverage stands on two alternative grounds. "When an appellate court bases its decision on alternative grounds, none is dictum." (*Greyhound Lines, Inc.* v. *County of Santa Clara* (1986) 187 Cal.App.3d 480, 485 [231 Cal.Rptr. 702].) The unremarkable ground of *Kim W.* is that the insured and his victim simply pled themselves out of court. The insured's "answer effectively admitted that his conduct was intentional. Nowhere in his answer did he allege that although his acts were wilful, their harmful consequences were unexpected, or that he had no intent to harm his victim." (160 Cal.App.3d at p. 333.) The minor's complaint in the underlying civil action similarly acknowledged the insured's "acts were wilful and intentional within the meaning of both the policy exclusion and Insurance Code section 533." (*Id.* at p. 334.)

The pleadings here differ from those in *Kim W.* in that the insureds and their victims placed in issue whether the former intended to injure the latter. Moreover, both cases here have been tried and the fact finder has

been persuaded by evidence that neither insured intended to injure his victim by his sexual misconduct. Insureds and their victims correctly contend that *Kim W.* is factually distinguishable on this basis.

Insurer's contention of presumed intent to injure is based on *Kim W.'s* other ground for denying coverage, summarized as follows. In attempting to protect children by enacting Penal Code section 288, the Legislature has implicitly determined "that at least some harm is inherent in and inevitably results from those acts." (160 Cal.App.3d at p. 333.) *People* v. *Austin* (1980) 111 Cal.App.3d 110 [168 Cal.Rptr. 401] recognizes that a child may be harmed in different ways by a violation of Penal Code section 288. (*Ibid.*) In some situations "the nature of the intentional act of the insured is such that an intent to cause at least some harm can be inferred as a matter of law." (*Kim W., supra,* at p. 332.) In conclusion, "an act which is a violation of Penal Code section 288 is a wilful act within the meaning of Insurance Code section 533. [Fn. omitted.]" (*Id.* at p. 333.)

"We acknowledge we are not bound by an opinion of another District Court of Appeal, however persuasive it might be. [Citation.] We respect stare decisis, however, which serves the important goals of stability in the law and predictability of decision. Thus, we ordinarily follow the decisions of other districts without good reason to disagree." (*Greyhound Lines, Inc., supra,* 187 Cal.App.3d 480, 485.)

Insureds and their victims provide no good reason for us to disagree with *Kim W.'s* inference, as a matter of law, of an intent to injure from the commission of such crimes. It has been recently applied as California law in *State Farm Fire and Casualty Co.* v. *Bomke* (9th Cir. 1988) 849 F.2d 1218, where an intent to harm was inferred as a matter of law from the insured's aiding and abetting of kidnapping, rape, and oral copulation, and in *Allstate Ins. Co.* v. *Gilbert* (9th Cir. 1988) 852 F.2d 449, where an intent to harm was inferred as a matter of law from conduct amounting to a violation of Penal Code section 288. We recognize that, in a different context, *Clemmer, supra,* 22 Cal.3d 865, 882, stated "presumptions should not be created judicially unless there are compelling reasons for doing so." In our view, *Kim W.* articulated compelling reasons for inferring intent to injure as a matter of law from a violation of Penal Code section 288, which the trial court found Abbott had committed.

At oral argument, Shreve forcefully contended: his violation of Penal Code section 288a, subdivision (b)(2), with a boy who was 14 and 15 at the time is not as inherently bad as a violation of section 288; he says that in a number of states and some foreign countries, sex with a 14-year-old is not a crime at all; therefore, *Kim W.'s* presumption of excluded intent should not

be extended to his conduct. Considering the acts involved in a violation of section 288a, subdivision (b)(2), however, we deem the reasoning of *Kim W.* equally applicable. We thus conclude that Shreve's intent to injure the youth must be inferred as a matter of law from his violation of section 288a, subdivision (b)(2).

Abbott and his victim point out that Penal Code section 288, subdivision (a), defines a specific intent crime (*People* v. *Austin, supra,* 111 Cal.App.3d 110, 115), but the requisite specific intent is not the intent to injure. Shreve and his victim point out that Penal Code section 288a, subdivision (b)(2), is not a specific intent crime. (*People* v. *Brocklehurst* (1971) 14 Cal.App.3d 473, 476 [92 Cal.Rptr. 340].) These contentions miss the point. An intent to injure need not be an element of the crime for the criminal conduct to be subject to this insurance exclusion. The nature of either crime is such that if a person is found to have committed it, as Abbott and Shreve were, an intent to injure the victim is the only rational inference.

Insureds and their victims contend that the rationale of a unanimous Supreme Court in *Clemmer, supra,* 22 Cal.3d 865 (discussed *ante*, pp. 1019-1020) forbids an inference which, as a matter of law, disregards psychiatric evidence. *Clemmer* did reject an insurer's request to disregard psychiatric evidence and find an intent to harm as a matter of law. *Clemmer* and the other cases discussed in part 3 *ante* are at least distinguishable because none involved adult criminal sexual misconduct with minors. Further, the trial court here specifically found the commission of these sex crimes despite the psychiatric testimony.

■ While the California Supreme Court's denial of review in *Kim W.* (160 Cal.App.3d 326, 335) is not tantamount to an affirmance, it is not without significance. (*DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 178 [18 Cal.Rptr. 369, 367 P.2d 865]; *Prescod* v. *Unemployment Ins. Appeals Bd.* (1976) 57 Cal.App.3d 29, 39 [127 Cal.Rptr. 540].)

Insureds and their victims request judicial notice of exclusions allegedly found in other insurance policies more specifically directed to child abuse or abuse of another person. We deny this request. Insurer properly objects on the basis that insufficient information is supplied to establish the context of these photocopies. (Evid. Code, §§ 452, subd. (h), 453, 459; *Whispering Pines Mobile Home Park, Ltd.* v. *City of Scotts Valley* (1986) 180 Cal.App.3d 152, 162-163 [225 Cal.Rptr. 364].) In any event, taking notice would not affect our conclusion that the exclusions at issue are clear enough.

Insureds and their victims emphasize that unlike the court in *Kim W.,* we are confronted with psychiatric and other evidence that insureds did not

intend to harm their victims. Cases from other jurisdictions have considered such evidence.

### B. *Other Jurisdictions*

All parties claim support in other jurisdictions. The following cases exhibit a variety of approaches to determining whether insurance coverage applies to sexual misconduct with minors when there is a policy exclusion for injury expected or intended by the insured. Most favor insurer. None involves a statutory insurance exclusion.

One line of authority differs from California law by measuring the intent of the insured by the objective reasonable person standard—not the insured's subjective intent. (*CNA Ins. Co.* v. *McGinnis* (1984) 282 Ark. 90 [666 S.W.2d 689, 690-691]; *Linebaugh* v. *Berdish* (1985) 144 Mich.App. 750 [376 N.W.2d 400, 402-403].) *McGinnis* regarded testimony from the insured and a psychologist that no harm was intended as flying " 'in the face of all reason, common sense and experience.' " (666 S.W.2d at p. 691.) *Linebaugh,* as did *Kim W.,* reasoned that the legislative penalization of such conduct supported the conclusion that an intent to injure can be inferred as a matter of law from sexual penetration of a minor. (376 N.W.2d at p. 405.)

This objective analysis was criticized in *Rodriguez* v. *Williams* (1986) 107 Wn.2d 381 [729 P.2d 627], as follows. "[T]he policy specifically states that the insured must expect or intend harm. Thus, the policy language itself is inconsistent with a blanket objective person standard, and the policy language must control." (*Id.* at p. 630.)[8] *Rodriguez* thus interprets insurance policy exclusions as referring to the insured's subjective intent to injure, which is what we have assumed California law to be. Other states' authorities agree. (*Fireman's Fund Ins. Co.* v. *Hill* (Minn. 1982) 314 N.W.2d 834, 834-835;[9] *MacKinnon* v. *Hanover Ins. Co.* (1984) 124 N.H. 456 [471 A.2d 1166, 1167;[10] *Zordan by and Through Zordan* v. *Page* (Fla.App. 1986) 500

---

[8] This criticism was directed at the earlier opinion of the Washington Court of Appeal (at 42 Wn.App. 633 [713 P.2d 135]). Presumably it also applies to *Grange Ins. Assn.* v. *Authier* (1986) 45 Wn.App. 383 [725 P.2d 642, 644], which followed the earlier opinion, although not mentioned in the Supreme Court's opinion.

[9] This was the only foreign authority discussed, although not expressly relied on, by *Kim W.* (160 Cal.App.3d 326, 332, fn. 2.) Most others cited here postdate *Kim W.*

[10] The New Hampshire Supreme Court adopted an objective approach in *Vermont Mutual Ins. Co.* v. *Malcolm* (1986) 128 N.H. 521 [517 A.2d 800] without acknowledging this earlier decision. *Malcolm* focused on the extent of coverage for accidents without mentioning any exclusion for injury intended by the insured. The court reasoned that "accident" did not mean an act which "is so inherently injurious that it cannot be performed without causing the resulting injury." (*Id.* at p. 802.) Alleged sexual assaults by the insured on a boy could not meet this definition of "accident" since psychological injury is inherent, regardless of the insured's intent, as recognized by legislative proscription of the acts. (*Id.* at pp. 802-803.)

So.2d 608, 609 (review den. 508 So.2d 15); *State Auto Mut. Ins. Co.* v. *McIntyre* (N.D.Ala. 1987) 652 F.Supp. 1177, 1178, 1193-1194; *Altena* v. *United Fire & Cas. Co.* (Iowa 1988) 422 N.W.2d 485, 486, 488, 490; *Allstate Ins. Co.* v. *Thomas* (W.D.Okla. 1988) 684 F.Supp. 1056, 1058.)

Most jurisdictions, including Washington, which ordinarily apply this subjective standard have nevertheless disregarded the insured's denial of a specific intent to injure and inferred an intent to injure or harm as a matter of law in sexual misconduct cases. Some decisions appear to draw this inference only after considering evidence apart from the fact of the insured's sexual misconduct with a minor. (*Fireman's Fund Ins. Co.* v. *Hill, supra,* 314 N.W.2d 834, 835 (Minn.); accord *State Farm Fire and Cas. Co.* v. *Williams* (Minn. 1984) 355 N.W.2d 421, 424—nonconsensual sexual assaults on a handicapped adult; *Altena* v. *United Fire & Cas. Co., supra,* 422 N.W.2d 485, 490 (Iowa)—forcible sex with naive adult.) These could perhaps be distinguished on their facts, as insureds and their victims contend.

Most courts, however, like *Kim W.,* have inferred a specific intent to injure as a matter of law from the fact of sexual misconduct with a minor. (*Horace Mann Ins. Co.* v. *Independent School Dist.* (Minn. 1984) 355 N.W.2d 413, 416; *Estate of Lehmann by Lehmann* v. *Metzger* (Minn. 1984) 355 N.W.2d 425, 426; *Mutual Service Casualty Ins. Co.* v. *Puhl* (Minn. App. 1984) 354 N.W.2d 900, 901-902; *Illinois Farmers Ins. Co.* v. *Judith G.* (Minn.App. 1986) 379 N.W.2d 638, 641-642; *Rodriguez* v. *Williams, supra,* 107 Wn.2d 381 [729 P.2d 627, 630-631]; *Public Employees Mut. Ins. Co.* v. *Rash* (1987) 48 Wn.App. 701 [740 P.2d 370, 373]; *Landis* v. *Allstate Ins. Co.* (Fla.App. 1987) 516 So.2d 305, 307, and *McCullough* v. *Central Florida YMCA* (Fla.App. 1988) 523 So.2d 1208, adopting by reference dissent in *Zordan* v. *Page, supra,* 500 So.2d 608, 613-614; *Allstate Ins. Co.* v. *Thomas, supra,* 684 F.Supp. 1056, 1060.) Some opinions, like *Kim W.,* bolster this mandatory inference by surmising that the Legislature penalized sexual misconduct with minors due to its inherent harmfulness. (*Rodriguez* v. *Williams, supra,* 729 P.2d 627, 630; *Landis* v. *Allstate Ins. Co., supra,* 516 So.2d 305, 307; *Allstate Ins. Co.* v. *Thomas, supra,* 684 F.Supp. 1056, 1060; accord *Altena* v. *United Fire & Cas. Co., supra,* 422 N.W.2d 485, 490.) One also took judicial notice of social studies of rape trauma. (*Altena* v. *United Fire & Cas. Co., supra,* 422 N.W.2d 485, 490.)

Some of these opinions disregard not only the insured's denial of an intent to injure, but psychiatric evidence to the same effect. (*Illinois Farmers Ins. Co.* v. *Judith G., supra,* 379 N.W.2d 638, 643; *Rodriguez* v. *Williams, supra,* 729 P.2d 627, 628, 631; *Public Employees Mutual Ins. Co.* v. *Rash, supra,* 740 P.2d 370, 373.) As stated in *Illinois Farmers Ins. Co., supra,* 379 N.W.2d 638, 643, evidence of the insured's "subjective intent is irrelevant"

in light of the compelling inference arising from the insured's sexual misconduct with a minor.

Insureds and their victims prefer us to follow a minority of decisions treating insurance coverage for sexual misconduct as dependent on evidence of the insured's actual, subjective intent to injure. (*State Auto Mut. Ins. Co. v. McIntyre, supra,* 652 F.Supp. 1177, 1194, 1218-1219—distinguishing precedent from other jurisdictions as inconsistent with Ala. law; *MacKinnon v. Hanover Ins. Co., supra,* 471 A.2d 1166, 1167-1169; *Zordan v. Page, supra,* 500 So.2d 608, 610-611.) We observe that the latter two decisions are questionable authority in their own jurisdictions. As noted *ante* (fn. 10), the New Hampshire Supreme Court has apparently reversed itself without citing its earlier *MacKinnon* opinion. Two different appellate courts in Florida have adopted the dissent of *Zordan v. Page, supra,* 500 So.2d 608, 610-611, and certified this conflict for review by the Florida Supreme Court. (*Landis v. Allstate Ins. Co., supra,* 516 So.2d 305, 307; cf. *McCullough v. Central Florida YMCA, supra,* 523 So.2d 1208.)

One undiluted authority favoring insureds and their victims is *McIntyre, supra,* 652 F.Supp. 1177. We are not persuaded by this minority view, even assuming the federal district court opinion has correctly predicted Alabama state courts will not presume an intent to injure from an insured's sexual misconduct with a minor in disregard of the insured's subjective intent.

An opinion very recently filed after these cases were submitted for oral argument, *State Farm Fire and Casualty Co. v. Estate of Elmer Jenner* (9th Cir. 1988) 856 F.2d 1359, requires discussion. At issue there, under California law, was whether to infer an intent to injure as a matter of law from an insured's conviction of violations of Penal Code sections 288, subdivision (a), and 288a, subdivision (c). We agree with the following observations of the court. "[W]e do not find *Clemmer* and *Kim W.* to be irreconcilable. *Kim. W.* did not dispense with the subjective intent to harm requirement in all cases, but held only that as a policy matter, such intent to harm may be presumed from admitted violations of section 288. *Clemmer* did *not* forbid the use of presumptions in some cases to establish specific intent. Further, *Clemmer* was not a child molestation case." (856 F.2d at pp. 1363-1364, italics in original.) Moreover, *Kim W.* does not establish a conclusive or irrebuttable presumption. (*Id.* at p. 1364, fn. 4.)

The court recognized itself to be bound by its prior decisions in *Bomke* and *Gilbert* above. It noted (856 F.2d at p. 1364, fn. 3) that they did not reach the question whether the *Kim W.* inference could be overcome. The court went on to hold that a triable issue was presented by the declarations

of the insured and two doctors to the effect that the insured "was a pedophile who did not intend to harm children." (856 F.2d 1359, 1364.)

*Estate of Jenner* arose from a summary judgment, while our cases arise after trial. As we explain below, we part company with the Ninth Circuit regarding the quality of the evidence sufficient to rebut the inference from criminal sexual misconduct of an excludable intent to injure.

## 5. *Psychiatric Evidence*

The position of insureds and their victims is that we are bound by the substantial evidence rule to affirm the trial court's findings that neither Abbott nor Shreve had the intent to injure their victims which avoids insurance coverage.

 As we have previously stated the standard of review: " '[A]ll factual matters will be viewed most favorably to the prevailing party . . . and in support of the judgment [citation].' (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 . . . .) ' "In brief, the appellate court ordinarily looks only at the evidence supporting the successful party, and disregards the contrary showing." . . . All conflicts, therefore, must be resolved in favor of the respondent. [Citation.]' (*Id.* at pp. 925-926 . . . .) ' "[T]he power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the [court]. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. . . ." ' (*Florez* v. *Groom Development Co.* (1959) 53 Cal.2d 347, 354 . . . .)" (*Santa Clara County Environmental Health Assn.* v. *County of Santa Clara* (1985) 173 Cal.App.3d 74, 81 [218 Cal.Rptr. 678], italics omitted.)

On the other hand, " 'Substantial' means evidence 'of ponderable legal significance. Obviously the word cannot be deemed synonymous with "any" evidence. It must be reasonable in nature, credible, and of solid value; it must actually be "substantial" proof of the essentials which the law requires in a particular case.' [Citations.]" *Claussen* v. *First American Title Guaranty Co.* (1986) 186 Cal.App.3d 429, 436 [230 Cal.Rptr. 749].) A judgment resting on inherently incredible evidence should not be affirmed. (*Estate of Emerson* (1917) 175 Cal. 724, 735-736 [167 P. 149]; *Babu* v. *Petersen* (1935) 4 Cal.2d 276, 286 [48 P.2d 689]; *Herbert* v. *Lankershim* (1937) 9 Cal.2d 409, 429, 471-472, 476-477 [71 P.2d 220]; see *Neilson* v. *Houle* (1927) 200 Cal. 726, 727-728 [254 P. 891]; *Hicks* v. *Ocean Shore Railroad, Inc.* (1941) 18 Cal.2d 773, 780 [117 P.2d 850]; *Evje* v. *City Title Ins. Co.* (1953) 120

Cal.App.2d 488, 492 [261 P.2d 279]; *Daly* v. *Wallace* (1965) 234 Cal.App.2d 689, 692-693 [44 Cal.Rptr. 642].)

 In our view, the psychiatric evidence failed to remove either case from the rule of *Kim W., supra,* 160 Cal.App.3d 326. The testimony was primarily concerned with whether the insureds subjectively intended to injure their victims. This testimony was irrelevant. Virtually none of the testimony was concerned with disproving that either insured intended to perform the acts constituting criminal sexual misconduct or that Abbott lacked the specific intent required by Penal Code section 288, subdivision (a). In fact, the trial court found that Abbott had violated this section and that Shreve had violated Penal Code section 288a, subdivision (b)(2). In light of the inference which must be drawn from such criminal sexual misconduct, any psychiatric evidence offered to negate this criminal intent is immaterial.

## 6. *Duty to Defend*

Shreve separately contends the sole question before us is insurer's duty to defend him, not indemnify him. We recognize that insurer's duty to defend Shreve is broader than its duty to indemnify Abbott because the duty to defend arises if the underlying civil claim is potentially covered by insurance. (Cf. *Gray, supra,* 65 Cal.2d 263, 271-272, 275-277; *Lowell* v. *Maryland Casualty Co.* (1966) 65 Cal.2d 298, 300-302 [54 Cal.Rptr. 116, 419 P.2d 180]; *Allstate Ins. Co.* v. *Overton, supra,* 160 Cal.App.3d 843, 851.) "But where there is no possibility of coverage, there is no duty to defend" (*State Farm Fire & Cas. Co.* v. *Superior Court* (1987) 191 Cal.App.3d 74, 77 [236 Cal Rptr. 216]) and the insurer is entitled to declaratory relief if the underlying civil action will not resolve issues affecting coverage. (*Fire Ins. Exchange* v. *Jiminez* (1986) 184 Cal.App.3d 437, 441-442 [229 Cal.Rptr. 83]; see *State Farm Mut. Auto Ins. Co.* v. *Allstate Ins. Co.* (1970) 9 Cal.App.3d 508, 527 [88 Cal.Rptr. 246]; *Allstate Ins. Co.* v. *Fisher* (1973) 31 Cal.App.3d 391, 396 [107 Cal.Rptr. 251].) We conclude that insurer has no duty to defend Shreve against the underlying civil action because there is no possibility of insurance coverage since the action is predicated on his criminal sexual misconduct with a minor. As already determined above, this fact alone excludes his conduct from coverage, regardless of what other evidence might surface in the underlying action.

## 7. *Disposition*

The judgments in both cases are reversed with directions to the trial courts to enter judgment in favor of insurer.

Brauer, J., and Capaccioli, J., concurred.

The petitions of all parties for review by the Supreme Court were denied December 15, 1988. Broussard, J., was of the opinion that the petitions should be granted.